## NOVAK v. DISTRICT OF COLUMBIA.
### No. 395.

Municipal Court of Appeals for the
District of Columbia.
Sept. 25, 1946.

---

[1] Parlton v. United States, 64 App.D.C. 169, 75 F.2d 772; Young v. United States, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832.

Harry W. Goldberg, of Washington, D. C., for appellant.

Chester H. Gray, Principal Asst. Corp. Counsel, of Washington, D. C. (Vernon E. West, Corp. Counsel and Edward A. Beard, Asst. Corp. Counsel, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant was convicted by a jury of driving an automobile while under the influence of intoxicating liquor.[1] He appeals upon three grounds: first, that testimony regarding a urinalysis of a specimen taken while he was under arrest was improperly admitted because insufficiently identified and because there was insufficient evidence that the specimen was in the same condition when taken and when analyzed; second, that the specimen was obtained from appellant by inducement or compulsion and thus constituted an illegal search and seizure in violation of the Fourth Amendment; and third, that the taking and use of the specimen constituted a compulsory self-incrimination in violation of the Fifth Amendment.

At the trial several witnesses testified that defendant was operating a motor vehicle at the time and place in question, that he was involved in an accident, and that immediately afterwards he appeared to be under the influence of intoxicants. Other witnesses, both prosecution and defense, testified that he did not appear to be under the influence of intoxicants. Thus the evidence regarding the urinalysis may have been decisive in the minds of the jury.

The specimen was taken at a police precinct station, some time after defendant's arrest, by a uniformed police officer attached to the Accident Prevention Unit. Defendant at the time appeared lucid and answered questions clearly. The policeman requested of defendant a sample of his urine, and defendant agreed to give it.

[1] Code 1940, § 40—609(b).

The officer did not inform defendant he had a right to refuse to give the sample nor inform him the sample might be used as evidence against him, but did state that "if sample were right it would be to the defendant's benefit."

The history of the bottle containing the specimen was recited in some detail. Before taking the sample, the officer rinsed the bottle with water; after taking the sample he replaced the cork stopper, then labeled the bottle with defendant's name, the time and place of taking the sample, and his own initials. The bottle was never sealed. This was the only sample taken by the officer that day. It being Sunday, the officer took the bottle home with him that night and placed it in his refrigerator. His wife was in bed when he arrived home, and he got up before she did the next morning. The refrigerator was not locked. Monday morning he delivered the sample to Mr. Alter, a chemist at the District Health Department laboratories.

Mr. Alter made a urinalysis of the specimen but had left the District's employ at the time of the trial and did not testify. However, another qualified District Government chemist, Mr. Yongue, testified that about 20 days after the specimen was taken a sample of urine in a bottle was turned over to him by the then chief chemist, Mr. Reed, to check it for alcoholic content against an earlier analysis made by Mr. Alter; that he made the examination without consulting the report made by Mr. Alter; that his analysis showed "an alcoholic content of .24 of 1% in the sample of urine bearing the label with the name of defendant;" that he then compared this analysis with that made by his predecessor, Mr. Alter, and both analyses "checked exactly." The evidence regarding alcoholic content as shown by the two analyses was read from the laboratory record book.

The testimony of Mr. Yongue also showed the "sample in question" was stored in an unlocked refrigerator when it was turned over to him by Mr. Reed; that in the same refrigerator were about 20 other samples of urine; that this sample was corked when turned over to him but not sealed; that the refrigerator was accessible to about 11 persons employed in the chemical and bacteriological laboratories which were not locked and was also accessible to the cleaning staff; that in making his analysis he had withdrawn a specimen from the labeled bottle which he had beside him in court. The specimen itself, however, was not offered in evidence.

The trial judge, over objection, admitted in evidence the laboratory records of the analyses. Dr. Oscar B. Hunter, physician and pathologist, whose qualifications as an expert were admitted, thereupon answered a hypothetical question by stating that in his opinion a chemical analysis of "the sample of urine" showing .24 of 1% of alcohol "indicated that the defendant was under the influence of intoxicating beverage at the time of his arrest."

On cross-examination Dr. Hunter testified that "a sample of urine taken under the circumstances of the instant case before the court might be satisfactory but would not be the preferable way; that the failure to seal the sample would not cause the defendant disadvantage unless the sample had been tampered with, because exposure to air would tend to cause evaporation of alcohol from the sample; that he himself usually took two samples when making examinations, one of the blood and one of the urine, in order that they might act as a check upon each other."

We rule that the laboratory records of the urinalysis were properly admitted in evidence. The evidence disclosed that such records were kept in conformity with the formal tests prescribed by the Federal Shop Book Statute, 49 Stat. 1561, 28 U.S.C.A. § 695, as construed in New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297. We agree that it was still incumbent upon the government to prove that the specimen taken from defendant and the one analyzed by the chemists, and reported on in court, were the same and were in substantially the same condition when tested as when taken.[2] We think there was sufficient evidence to justify the

[2] United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413, and cases there cited. See also Chin Gum v. United States, 1 Cir., 149 F.2d 575; Weaver v.

trial judge in holding that the evidence met this test. As was indicated by Dr. Hunter, the very nature of this specimen made improbable any change in it which would have disadvantaged defendant short of deliberate tampering with the bottle. No evidence of such tampering was even suggested.

 We believe, too, that defendant's rights under the Fourth and Fifth Amendments to the Constitution were not infringed. The Fourth Amendment guarantees that "The right of the people to be secure in their persons, * * * against unreasonable searches and seizures, shall not be violated." Here it is conceded that defendant had been legally arrested and was being legally detained when the specimen was taken. It is elementary that evidence obtained from a person under legal arrest is admissible over an objection grounded on illegal search and seizure.[3] Here the specimen itself was not offered in evidence, but it is obvious that the same rule applies to chemical analysis of the direct evidence.

There remains the final and most important contention of defendant: that the taking of the specimen and the use in evidence of the analyses of its content violated his rights under the Fifth Amendment guaranteeing that "No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

Defendant contends that the specimen was given as a result of inducement or duress or both. The duress claim is based on the fact that when the specimen was taken the officer was in uniform, and defendant was under arrest and was not informed that he had a right to refuse to give the sample or that it might be used against him in evidence. The inducement claim is based upon the officer's statement to defendant that "if

sample were right it would be to the defendant's benefit."

 Assuming that the taking of a body fluid is governed by the same rules of evidence as apply to oral utterances, we rule there was neither duress nor inducement in the sense that would make the giving of the specimen involuntary. The record shows affirmatively that at the time defendant appeared lucid and answered questions clearly, that he was asked to give the specimen and agreed to do so. There is no suggestion that defendant was not of normal intelligence, nor of any other surrounding circumstances which have led to the rejection of statements or confessions.

Statements are frequently taken by officers in uniform while defendants are under arrest. "A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them."[4] Furthermore, "it is not essential to the admissibility of a confession that it should appear that the person was warned that what he said would be used against him; but, on the contrary, if the confession was voluntary, it is sufficient though it appear that he was not so warned."[5]

Then, too, we do not believe the officer's statement to defendant was an "inducement" in the sense the word is used in the law of involuntary statements.[6] It was as though the officer had said, "If you are innocent, making a statement will help you." A person of even ordinary intelligence would draw from the officer's statement the inference that if the specimen were not "right" it would not be to the defendant's benefit. We hold that the trial judge was justified in ruling that the specimen was given voluntarily. Therefore, even if the giving of such a specimen is to be classed with making a confession, the admission of

United States, 8 Cir., 111 F.2d 603; Boyd v. United States, 9 Cir., 30 F.2d 900.

3 Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Moder v. United States, 62 App.D.C. 65, 64 F.2d 703.

4 Wagner v. United States, 5 Cir., 110 F.2d 595, 596, certiorari denied 310 U.S. 643, 60 S.Ct. 1104, 84 L.Ed. 1411.

5 Wilson v. United States, 162 U.S. 613, 623, 16 S.Ct. 895, 900, 40 L.Ed. 1090. See also Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L.R. 1318.

6 Murphy v. United States, 7 Cir., 285 F. 801, certiorari denied 261 U.S. 617, 43 S.Ct. 362, 67 L.Ed. 829; State v. Small, 233 Iowa 1280, 11 N.W.2d 377.

the analyses in evidence was proper. The weight to be given to the results of the urinalyses and the medical testimony on the meaning thereof was for the jury to determine.[7]

Appellant argues that the giving of a specimen for urinalysis is the same, from an evidentiary standpoint, as making a statement or confession, and, if the specimen is given involuntarily, it is not admissible evidence. In what we have already said, we have assumed, without deciding, the correctness of this position. The government contends, on the contrary, that taking such a specimen is like taking a prisoner's finger prints, making him submit to be photographed, making him display his body, or trying on a coat to see if it fits. Results of such latter class of examinations, even if involuntary, have repeatedly been held admissible.[8] The question of the applicability of this rule to tests of body fluids has been discussed exhaustively in numerous State cases.[9]

We do not decide this question, since this specimen was given voluntarily while appellant was under legal arrest, and thus in any event the urinalysis was admissible in evidence.

Affirmed.

---

[7] State v. Haner, 231 Iowa 348, 1 N.W.2d 91.

[8] Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138; McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593; Shaffer v. United States, 24 App.D.C. 417; United States v. Cross, 20 D.C. 365, 9 Mackey 365; Bratcher v. United States, 4 Cir., 149 F.2d 742, 743; United States v. Kelly, 2 Cir., 55 F.2d 67, 83 A.L.R. 122; State v. Griffin, 129 S.C. 200, 124 S.E. 81, 35 A.L.R. 1227.

[9] State v. Duguid, 50 Ariz. 276, 72 P.2d 435; Touchton v. State, 154 Fla. 547, 18 So.2d 752; Spitler v. State, 221 Ind. 107, 46 N.E.2d 591; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; State v. Haner, supra; State v. Morkrid, Iowa 1939, 286 N.W. 412; State v. Cash, 219 N.C. 818, 15 S.E.2d 277; State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265; State v. Cram, Or., 160 P.2d 283; Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W.2d 381.