## RIDGELL v. UNITED STATES.
### No. 524.

Municipal Court of Appeals for the
District of Columbia.

Aug. 28, 1947.

Richard L. Merrick, of Washington, D. C., and Thomas H. King, of Baltimore, Md., for appellant.

John P. Burke, Asst. U. S. Atty., of Washington, D. C. (George Morris Fay, U. S. Atty., and William S. McKinley, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellant Ridgell was found guilty and sentenced upon a charge of negligent homicide. Code 1940, 40—606. He was charged with having caused the death of one Roger Lewis in an automobile accident on November 24, 1946. Ridgell and Lewis were both employed at a filling station at Alabama Avenue and Good Hope Road. On the night in question the station closed at midnight or shortly afterwards. Ridgell admitted he had had "a few" beers before closing time. As they started out, there were in addition to Ridgell and Lewis, six people (four men and two women). One of these men, Richard DeButts, had his car at the station, as did Ridgell. They all left the station shortly after midnight.— Lewis going in Ridgell's car, which Ridgell admittedly was driving at that time, and the rest following in DeButts' car.

At a stop sign, just outside the station, Ridgell's car stalled. DeButts slowed down to about 5 miles per hour at this sign, and passed Ridgell's car. DeButts testified that he saw no activity around the stalled car at this time. About a block and a half (330 feet) past the stop sign, on Naylor Road, the Ridgell car passed DeButts who was then going about 25 miles per hour. As they went uphill DeButts again passed the Ridgell car. Going down the other side of the hill Ridgell's car passed DeButts, shortly before the intersection of Naylor Road and 25th Street. Speeds were apparently increasing as DeButts testified that Ridgell's car was traveling between 35 and 40 miles per hour when it last passed him. At the intersection of Naylor Road and 25th Street, Ridgell's car went down Naylor Road, while DeButts started down 25th Street. DeButts could still see the Ridgell car, and saw it swerve. He circled the block to his left and came back to Naylor Road. There he found the Ridgell car overturned close to the intersection of Naylor Road and 24th Place.

Shortly after passing the intersection with 25th Street (which runs due north and south) Ridgell's car hit the north curb of Naylor Road (which here runs northwest). Whoever was driving the car apparently lost control of it. It smashed into a car parked on that side of Naylor Road, and from there careened diagonally across the road for slightly more than 100 feet, where it struck a telephone pole. The car ended up, overturned, on Naylor Road, just north of its intersection with 24th Place, and facing south toward 24th Place.

When DeButts and the others came upon the scene, they found the car as described above. The right or passenger door was open; the left door was jammed shut. Ridgell was found lying just in front of his car, near the curb of Naylor Road. Lewis' body was found some distance east of the car, in 24th Place, partly on the curb, his head toward Naylor Road. This may have indicated to the jury that he had been thrown clear of the automobile before it finally overturned.

Ridgell and Lewis were taken in an ambulance to Casualty Hospital shortly after the accident, Ridgell sitting beside the ambulance driver. One of the passengers in DeButts' car said Ridgell seemed dazed and not aware of what he was saying, both at the scene of the accident and at the hospital.

At the hospital, a police officer heard Ridgell ask one of the women passengers in DeButts' car, who had been driving his car at the time of the accident. She said

she did not know; whereupon he said he would say that he had been driving.

Appellant was asked at the hospital to give a specimen of his urine, to determine whether or not it contained alcohol. One officer did not remember whether he warned that the results of the test might be used against Ridgell; but another officer testified that he warned Ridgell that the result might be used for or against him. Ridgell then gave the specimen. In his own testimony, at the trial, he said that he remembered giving it.

After Ridgell was treated and his head bandaged, he was taken to police headquarters where he gave a statement to the officers, about two hours after the accident. Before giving the statement, he asked how Lewis was, "and someone answered, I don't know who, and said he is O.K." In the statement he gave a rather full account of what had happened and said he was certain he had been driving the car. After Ridgell had signed the statement, he was told that Lewis was dead. He then said that he wanted to change his statement—that in truth Lewis had been driving at the time of the accident. He was asked why, if this were so, he had made the earlier statement. He said that he was "covering up" for Lewis who was drunk at the time of the accident, and who had a family and was having trouble with his wife. Ridgell had no family. Ridgell was then booked. In the afternoon, one of the officers went to see him at the cell block in No. 1 Precinct. Ridgell there explained that he and Lewis had changed seats when they stalled at the stop sign, Lewis having asked to drive. Then followed the prosecution, and the conviction from which this appeal has been taken.

Appellant assigns seven grounds of error. These, for the sake of clarity, we will group and consider under three headings.

1. Admission of defendant's signed confession.

2. Admission of testimony as to specimen of defendant's urine.

3. Exclusion of defendant's honorable discharge certificate, offered to show his good character.

■ Appellant argues that the confession should not have been received because defendant was not immediately taken before a committing magistrate and arraigned. He cites McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Akowskey v. United States, App. D.C., 158 F.2d 649, 650. In the Akowskey case the court quoted the following language used by the Supreme Court in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140:

"Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case which led us to rule that a conviction on such evidence could not stand."

No such objectionable conduct can be attributed to the police in this case. The uncontradicted evidence shows that defendant gave his statement voluntarily immediately after he was taken to headquarters, and that there were no threats or psychological pressure of any kind. There was testimony that he was "dazed" and "foggy" while at the hospital; but none that he was not aware of what he was saying and doing when he gave and signed the statement, about two hours after the accident.

■ Appellant makes the further point that the confession should not have been admitted until the government had established the corpus delicti of the crime by evidence aliunde. In support of this contention he cites a number of state cases.[1] We do not think these cases sustain his view of the law. They go no fur-

---

[1] Bradford v. State, 104 Ala. 68, 16 So. 107, 53 Am.St.Rep. 24; Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am.St. Rep. 844; Jaynes v. People, 44 Colo. 535, 99 P. 325, 16 Ann.Cas. 787; Bines v. State, 118 Ga. 320, 45 S.E. 376, 68 L.R.A. 33; Bergen v. People, 17 Ill. 426, 65 Am.Dec. 672; People v. Ranney, 153 Mich. 293, 116 N.W. 999, 19 L.R.A.,N. S., 443; People v. Barker, 60 Mich. 277, 27 N.W. 539, 1 Am.St.Rep. 501; Stringfellow v. State, 26 Miss. 157, 59 Am.Dec. 247; State v. German, 54 Mo. 526, 14 Am.Rep. 481; Blacker v. State, 74 Neb.

ther than to hold that a conviction cannot be predicated solely on an uncorroborated extrajudicial confession. Such also is the law in this jurisdiction. Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120; Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354. In the Ercoli case the court carefully summarized the applicable law as follows:

1. There can be no conviction on an uncorroborated extrajudicial confession.

2. Such corroboration is not sufficient if it tends merely to support the confession without also embracing substantial evidence touching and tending to prove each of the main elements or constituent parts of the corpus delicti.

3. The corroborating evidence need not establish the corpus delicti beyond a reasonable doubt, independent of the confession.

4. It is sufficient if there is substantial evidence of the corpus delicti, independent of the confession and the two together are convincing beyond a reasonable doubt.

■ Since the confession was admissible it was within the discretion of the trial judge to decide on the order and time of its admission; and it was not error for him to have received it before rather than after proof of the corpus deliciti.[2]

■■ Appellant says there was no evidence apart from the confession that he was driving the car at the time of the fatal accident. But as was held in the Forte case, supra, identity of the actor is not a necessary part of the corpus delicti.[3] The same rule was followed in the Ercoli case, supra, which involved the same offense as that charged here; and there the Court ruled that the elements of the corpus delicti in such a case are: (1) The death of a human being; (2) by the instrumentality of a motor car; (3) operated at an immoderate rate of speed, or in a careless, reckless, or negligent manner. From this it seems quite clear that the government was not required to establish the identity of the driver by any evidence apart from the confession. Our primary inquiry must be whether there was substantial evidence to meet the three tests just described. We think it is clear beyond question that all these elements were established by evidence which, insofar as this phase of the case is concerned, was neither contradicted nor disputed.

■ But appellant argues, correctly enough, that if he was not driving the automobile there was no crime at all, for the only other possible driver was the deceased himself. From that completely safe position he steps to one which is not nearly so secure. He reasons that the confession was used to prove the corpus delicti, because without it there would have been no showing that he, Ridgell, was driving at the time of the smash-up. But we think the government presented sufficient evidence on this point, independently of the confession. Ridgell himself took the witness stand and admitted that he was driving the car when they first started out. According to his version, as given to the police after he repudiated his confession, and also as given at the trial, he drove the car but a few feet when it stalled at the stop sign; he then got out and walked around to the right side of the car and took the passenger seat while Lewis slid over and took the wheel. DeButts' testimony was that when he passed the Ridgell car there was no activity around it. Therefore the change of seats, if it happened, must have been made after DeButts passed. Whether there was time for such a change, and whether the change was actually made or not, were typical jury questions. To assist the jury in answering these and other important questions they had before them an official chart of the streets involved and also a set of nine photographs taken by the police, graphically depicting the details of the situation. They also had the benefit of careful explanations of and demonstrations from these exhibits by the witnesses. They were also given measurements revealing the distances between the points

---

671, 105 N.W. 302, 121 Am.St.Rep. 751; People v. Rogers, 192 N.Y. 331, 85 N. E. 135, 15 Ann.Cas. 177; Nolan v. State, 60 Tex.Cr.R. 5, 129 S.W. 1108, Ann. Cas.1912B, 1248.

[2] Ercoli v. United States, supra; Wigmore on Evidence, 3rd Ed., § 2073.

[3] See also Wigmore on Evidence, 3rd Ed., § 2072.

involved, especially as to the final careening of the automobile just before it turned over, and the places and positions in which Ridgell and the body of Lewis were found. From all this the jury was, of course, entitled to find the facts and to shape reasonable inferences from such facts. We must hold that it was sufficient to establish the corpus delicti, with or without the confession.

### The Urinalysis.

While appellant was at the hospital, he was asked for a specimen of his urine, which could be tested to determine whether he was under the influence of alcohol at the time. One of the officers warned him that the results of such a test could be used for or against him. Ridgell then gave the specimen. At the trial the specimen was produced, properly identified, and the results of the test were admitted in evidence, over objection by appellant. According to expert testimony the tests showed .22 percent alcohol and established that Rigell was under the influence of alcohol at the time.

Appellant does not contend that the specimen was not given voluntarily. There is absolutely no showing of duress, intimidation, or entrapment. But appellant claims that the giving of the specimen is the equivalent of a confession and is therefore protected by the privilege of the Fifth Amendment against self-incrimination.

A somewhat analogous situation was before us in Novak v. District of Columbia, D.C.Mun.App., 49 A.2d 88, which involved a charge of driving while under the influence of alcohol. There the accused was under arrest when he furnished the urine specimen. We decided that evidence as to such a specimen and the chemical analysis thereof was admissible over an objection grounded on illegal search and seizure; and that the taking of the specimen and the use thereof was not violative of defendant's rights under the Fifth Amend-

ment. We did not decide whether the giving of such specimen for analysis is the same, from an evidentiary standpoint, as making a statement or confession. The United States Court of Appeals allowed an appeal from our decision "to establish the correct rule for this jurisdiction concerning this type of evidence." As it developed, however, that Court did not pass on the question but held that on the state of the record of trial proceedings the issue was not properly before it and reversed on the sole ground that the evidence had been improperly admitted because not sufficiently identified, that " * * * a necessary link in the chain of identification" was missing. Novak v. District of Columbia, App. D.C., 160 F.2d 588.

We must now decide the question on which we reserved decision in the Novak case. We hold that in taking the specimen there was no violation of any rights guaranteed by the Constitution. The whole history of the privilege against self-incrimination shows that it was designed to protect against *testimonial* compulsion.[4] There was no such compulsion here. The evidence sought was whether the accused was under the influence of alcohol. He does not claim that the scientific test was inaccurate, or that the results of the test were incorrectly interpreted. "What is obtained from the accused by such action is not testimony about his body, but his body itself,"[5] or as here, fluid or secretions of his body. There seems to be no question that when such a specimen is given voluntarily the analysis thereof is admissible.[6] Moreover there is recent and explicit authority for the proposition that even when obtained without defendant's consent analogous evidence is admissible. In McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593, 594, certiorari denied 326 U.S. 788, 66 S.Ct. 472, 90 L.Ed. 478, a murder case, blood was discovered on the body of the defendant who was an enlisted

---

[4] Wigmore on Evidence, 3rd Ed., § 2263.

[5] Wigmore on Evidence, 3rd Ed., § 2265.

[6] See the following decisions cited by us in the Novak case, supra: State v. Duguid, 50 Ariz. 276, 72 P.2d 435; Touchton v. State, 154 Fla. 547, 18 So. 2d 752; Spitler v. State, 221 Ind. 107, 46 N.E.2d 591; State v. Werling, 234 Iowa 1109, 13 N.W.2d 318; State v. Haner, 231 Iowa 348, 1 N.W.2d 91; State v. Morkrid, Iowa, 1939, 286 N.W. 412; State v. Cash, 219 N.C. 818, 15 S. E.2d 277; State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265; State v. Cram, 176 Or. 577, 160 P.2d 283, 164 A.L.R. 952.

man and who was subjected by military order to an examination. The Court said: "Out of court as well as in court, his body may be examined with or without his consent." From all of the above, we think it clear that there was no error in the admission of the evidence concerning the urinalysis.

### Exclusion of Certificate of Honorable Discharge.

Finally we consider appellant's charge of error in the exclusion of a copy of his honorable discharge from the Army. This was offered toward the end of the trial to show that appellant "was honorably discharged and that his character was excellent." Defendant had already been permitted to tell the jury that he had served in the Army. On objection by the government the certificate was excluded. Broadening the grounds, appellant's counsel now say in their brief that the refusal to receive the discharge kept from the jury "material and convincing evidence of appellant's truth and veracity." They also argue that the certificate should have been received to show his good character and to show "a trait of character that reasonably would have prompted appellant to attempt to shield a companion."

But it was not offered for that purpose. Nor was it offered to show merely that he had received an honorable discharge. It was also offered as evidence of good character. Such a certificate does not conform to the test recently announced by the United States Court of Appeals in Stewart v. United States, 70 App.D.C. 101, 104 F. 2d 234, 235, that " * * *" the only admissible evidence of good character is what people generally, who know the accused, think about him * * *." Nor does it meet the test prescribed by the Supreme Court in Williams v. United States, 168 U.S. 382, 397, 18 S.Ct. 92, 45 L.Ed. 509, that such evidence must be based on the reputation of the defendant in the community where he lives. Obviously it would have been proper for appellant to show that he had a good reputation as a prudent, careful driver.[7] But just as obviously, he could not show that by means of his military discharge certificate.

Moreover, the certificate or its contents could not be impeached or its author cross-examined. We agree that there is something to be said in support of a contrary view of the matter, and Professor Wigmore has said it with his accustomed clarity.[8] He says that such a certificate should be liberally construed to import not merely general good character but any other fundamental moral traits that may be relevant in criminal cases; that the discharge is a comprehensive summary of a man's character and therefore, relevant on virtually any charge of serious crime. But he admits that the decided cases do not bear him out. The overwhelming judicial view seems to be that a discharge certificate is hearsay, ex parte, res inter alios acta, made by a person who is not before the court available for cross-examination, and inadmissable.[9] We have found no case which holds that such a certificate is admissible to prove good character. We must hold that considering the circumstances under which, and the purposes for which the discharge certificate was offered in this case, it was not error to have excluded it.

We have carefully considered appellant's further arguments based on the refusal of his motions for directed verdict at the end of the government's case and at the end of the whole evidence, and also the refusal to grant a new trial. His contentions with reference to these alleged errors we have fully considered in what we have said concerning the proof of the corpus delicti. The judgment of the trial court must stand.

Affirmed.

---

[7] See Robinson v. United States, App. D.C., 156 F.2d 574, where such evidence was held admissible in a negligent homicide case.

[8] Wigmore on Evidence, 3rd Ed., § 59.

[9] People v. Eckman, 72 Cal. 582, 14 P. 359. See also Hodge v. United States, 6 Cir., 13 F.2d 596; Taylor v. State, 120 Ga. 857, 48 S.E. 361; State v. Hewitt, Mo.Sup., 259 S.W. 773; Keyes v. Keyes, 27 N.M. 215, 199 P. 361; State v. Dolliver, 150 Minn. 155, 184 N.W. 848.

A somewhat different view was expressed in Sprencel v. United States, 5 Cir., 47 F.2d 501, where the court held that enlistment records and various medical records required to be kept by law were admissible as official records. But the case does not hold that good character may be established in this way.