**Curtis TILLMAN, Petitioner,**

v.

**DIRECTOR OF VEHICLES AND TRAFFIC OF THE DISTRICT OF COLUMBIA,**
Respondent.

**No. 2170.**

Municipal Court of Appeals for the District of Columbia.

Argued May 5, 1958.

Decided Oct. 2, 1958.

John T. Reges, Washington, D. C., for petitioner.

Hubert B. Pair, Asst. Corporation Counsel, Washington, D. C., with whom Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Ted D. Kuemmerling, Asst. Corporation Counsel, Washington, D. C., were on the brief, for respondent. Richard W. Barton, Asst. Corporation Counsel, Washington, D. C., also entered an appearance for respondent.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate judges.

ROVER, Chief Judge.

Petitioner was found guilty of driving his automobile on January 22, 1958, at a greater rate of speed than 15 miles an hour in a school zone where the speed limit was posted at 15 miles. He was convicted and fined $25.

Thereafter he was duly notified to appear before the Department of Vehicles and Traffic to show cause why his operator's permit should not be suspended or revoked. The matter came on before the hearing officer and at the outset, petitioner was advised the complaint against him was that on the above date, he had operated his automobile "in such a manner as to show a flagrant disregard for the safety of persons or property." Following the hearing his permit was revoked, and after review by the Acting Director of Vehicles and Traffic the revocation was approved. He now files this petition for review.

Counsel for petitioner first contends that due process was not accorded his client at the hearing because (1) he should have been notified of his right to counsel, (2) the police officer who testified against him should have been required to testify under oath, and (3) petitioner should have been permitted to cross-examine the officer.

The nature of due process in such administrative hearings is set out in our decision in Ritch v. Director of Vehicles & Traffic of District of Columbia, D.C.Mun. App., 124 A.2d 301, 302. Speaking for this court, Judge Hood wrote:

"Due process, in reference to administrative proceedings, demands that the case be 'fairly heard.' [Citing National Labor Relations Board v. Indiana & Michigan Elec. Co., 318 U.S. 9, 28, 63 S.Ct. 394, 87 L.Ed. 579.] The requirements of a fair hearing are dependent upon the nature and purpose of the hearing itself. The procedure followed need not conform strictly to the formalities of a court action and many administrative proceedings are purposely conducted in an informal manner. Informality, unless lacking in 'the rudimentary requirements of fair play,' [citing Morgan v. United States, 304 U.S. 1, 15, 58 S.Ct. 773, 775, 82 L.Ed. 1129] or violative of statutory regulation, does not violate due process."

In the same decision he said:

"* * * The primary purpose of revocation [of drivers' licenses] is not punishment of the individual but protection of the community. It is the result of a determination that the operator is endangering the lives and property of his fellow citizens. * * *"[1]

Reviewing the record of the proceedings before the Director, we rule, consistent with the principles enunciated in Ritch, that the hearing was fair and conducted in accordance with the due process requirements of administrative hearings.

After his conviction of the traffic offense, petitioner was notified in writing of the pendency in the Traffic Director's office of an action that might result "in the immediate suspension or revocation" of his operator's permit and he was requested to appear in that office within 72 hours after the receipt of the notice. On the day of the hearing he appeared and after a few prelim-

---

1. 124 A.2d at page 302.

inary questions was clearly told that the purpose of the hearing was to determine whether his operator's permit should be suspended or revoked, because on January 22, 1958, he had operated his vehicle "in such a manner as to show a flagrant disregard for the safety of persons or property." The hearing officer made it clear that the driving incident was the same for which he had been convicted and fined. Petitioner admitted that he had been fined in the traffic court for his conduct on that occasion.

The arresting officer testified that petitioner, at 8:55 a. m., when children were going to school, was driving through a school zone at 45 miles an hour, the maximum allowable speed being 15 miles; that upon his arrest he told the officer he was due at his place of employment at 9 a. m. and "that is why he was in somewhat of a hurry." The officer also testified that at the time in question, children were going to school; that it was a very congested area; that he had trouble getting close enough to petitioner's automobile to stop him because there were a great many children crossing the street at that point and getting out of automobiles. After he finished his testimony the hearing officer asked petitioner if he would like to make a statement regarding the charge against him; he made no response to this inquiry. Then the following transpired: He was asked how fast he was going and he replied, "I was speeding, I'll admit that I was going over fifteen miles an hour, but I really don't think I was driving forty-five, * * *." Then followed these questions and answers:

"Q. How fast do you think you were going? You said you were going over fifteen. How much over fifteen? A. * * * I'd say it was probably around about thirty...thirty-five miles an hour.

"Q. Did you know it was a school zone? A. Yes, sir, I knew it was a school zone. I stopped for a car to let some school kids out and he waved · me to come on around him, and I went on around him."

Petitioner was then told by the hearing officer that he was of the opinion the automobile had been driven "in such a manner as to show a flagrant disregard for the safety of persons and property. Therefore, I'm going to issue an Order of Revocation of your permit * * *."

It seems clear to us, as we held in Ritch, that petitioner was not prejudiced by the failure to be advised that he was entitled to assistance of counsel. The purpose of such hearings is not to retry the violation, but to confront the motorist with his infraction of the traffic regulations, which prima facie seems to justify suspension or revocation in the public interest. In such hearings, informal in character, the motorist is given an opportunity to explain the violation and to present any extenuating matter which would justify the retention of his permit.[2] Petitioner's statements at the hearing did not attempt to explain away his violation nor were they mitigative in character; they tended rather to support the action taken by the hearing officer. While he was not expressly told that he would be permitted to cross-examine the police officer when the latter had finished his testimony, the hearing officer said, "* * * Mr. Tillman, would you like to make a statement regarding this charge?" Petitioner made no response. He was then questioned concerning the transaction and given full opportunity to present his side of the matter. There is nothing in the record to support the contention that he was refused the right to cross-examine the officer. He never asked permission to question him, and there is no reason to feel that his request, if it had been made, would have been denied. Finally, there is no requirement that witnesses at such hearings be sworn.

2. See Daniels v. Director of Vehicles & Traffic of Dist. of Columbia, D.C.Mun. App., 143 A.2d 95; Ritch v. Director of Vehicles & Traffic of Dist. of Columbia, supra.

Petitioner further contends that the hearing officer exceeded his authority in revoking the permit in that under the "point system," [3] only three points could be assessed for the violation of which petitioner was convicted. He argues that neither a suspension nor revocation could be ordered and that the order of revocation consequently constitutes excessive punishment.

Under Code 1951, § 40–302, the Commissioners or their designated agent is authorized to "revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient." Code 1951, § 40–603, authorizes the Commissioners

> " * * * to make, modify, repeal, and enforce usual and reasonable traffic rules and regulations relating to * * * revocation of operators' permits; * * * and in the administration of the above powers * * * the commissioners may exercise the same through such officers or agents of the District as the commissioners may designate: * *."

By virtue of the above authority the Commissioners, by Order No. 296,973/1, dated December 30, 1952, Traffic and Motor Vehicle Regulations, Part V, (Point System Regulations), as amended, authorized the Director of Vehicles and Traffic to establish the "point system," but did not limit his authority to revoke or suspend permits merely to instances where the driver has accumulated certain points, because Section 5(a) of the above regulations provides that

> "Notwithstanding any of the other provisions of this order, the Director of Vehicles and Traffic, after giving notice and opportunity for hearing, is hereby authorized in his discretion to suspend or revoke the motor vehicle operator's permit or operating privilege of any individual who, in his opinion, * * * *has driven a motor vehicle in such manner as to show a flagrant dis-*

*regard for the safety of persons or property."* (Emphasis supplied.)

This delegation of authority by the Commissioners was expressly upheld by our decision in Ritch. Accordingly, we rule that the Director was authorized to revoke petitioner's permit when, following a lawful hearing, he concluded that petitioner had driven his vehicle in such a manner as "to show a flagrant disregard for the safety of persons or property." In reference to petitioner's argument that the revocation constitutes "excessive punishment," we said in Ritch, "The primary purpose of revocation is not punishment of the individual but protection of the community." We accordingly hold that petitioner had a fair hearing and that the Director was acting within his authority when he revoked the permit.

Affirmed.

---

3. See Chappelle v. Board of Commissioners of Dist. of Col., D.C.Mun.App., 110

A.2d 697, for an explanation of the operation of this procedure.