**Herbert E. LISTER, Petitioner,**

v.

**George A. ENGLAND, Director of Motor Vehicles of the District of Columbia, Respondent.**

**No. 3287.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1963.

Decided Nov. 20, 1963.

Stanley M. Dietz, Washington, D. C., for petitioner.

David P. Sutton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Coun-

sel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

HOOD, Chief Judge.

This appeal is from an order of the Director of the Department of Motor Vehicles revoking petitioner's privilege to operate a motor vehicle in the District of Columbia. Petitioner had been charged in the Court of General Sessions with the offenses of driving while under the influence of intoxicating liquor, reckless driving and colliding. As a result his operator's permit was suspended pending disposition of the court charges. When petitioner was tried the court directed a verdict in his favor on the reckless driving charge and a jury acquitted him of the other two charges. Thereafter there was a second hearing before a hearing officer of the Department of Motor Vehicles and at its conclusion the hearing officer made this finding: "I find Mr. Lister on the date of twenty-first of December nineteen sixty-two was involved, while apparently under the influence of intoxicating liquor to wit: point twenty-four urinalysis." On the basis of this finding the Permit Control Officer issued an order of revocation because: "On December 21, 1962 you were in collision with a motor vehicle while apparently under the influence of intoxicating liquor TO WIT: Urinalysis. '24." This appeal followed.

■ At the outset it should be noted that petitioner's permit was not revoked under the Point System, because points are assessed only after a conviction or forfeiture of collateral and petitioner had been acquitted of all court charges. This was a 5(a) proceeding, presumably to establish that petitioner had operated his motor ve-

hicle in such a manner as to show a flagrant disregard for the safety of persons or property.[1] The Director contends that a finding that petitioner operated a motor vehicle while under the influence of intoxicating liquor is the equivalent of a finding of a flagrant disregard for the safety of persons or property. But, as petitioner points out, there was no finding that he operated a motor vehicle while under the influence of intoxicating liquor. The finding was that petitioner "was involved [in a collision?] while *apparently* under the influence of intoxicating liquor to wit: point twenty-four urinalysis." (Emphasis added.) What meaning is to be ascribed to the word "apparently"? Petitioner argues that the word means only "seeming," while the Director contends it means "clear, evident or manifest." We cannot determine what meaning the hearing officer intended to be given to this word. A finding should be made in plain and unambiguous language in order that a reviewing body, such as this court, should not be left in doubt as to its meaning.[2]

More doubt as to the meaning of the finding arises from its concluding words: "to wit: point twenty-four urinalysis." Does this mean that because the statute, hereafter referred to, provides that specified urinalysis results will constitute prima facie proof of being under the influence of intoxicating liquor, the hearing officer concluded that because of this prima facie proof the petitioner was apparently under the influence? Again, it would serve no good purpose to speculate as to what the hearing officer intended by these words, but we think it is self-evident that the result of the urinalysis played an important part in the finding. This brings us to a point which has not been directly raised but which we feel must be considered.

■ Prior to the enactment of Public Law 85–338, March 4, 1958, 72 Stat. 30, 31,

1. See Mason v. Director of Motor Vehicles, D.C.Mun.App., 186 A.2d 893.

2. Braniff Airways, Inc. v. Civil Aeronautics Board, 113 U.S.App.D.C. 132, 306 F.2d 739.

now found in D. C. Code 1961, § 40–609a, in prosecutions for operating a motor vehicle while under the influence of intoxicating liquor, the result of a chemical analysis of the blood, urine or breath of the defendant was relevant evidence only when there was present an expert witness qualified to interpret the result of the analysis.[3] To avoid the necessity of having such expert witness testify in each individual case the statute was enacted,[4] providing that certain results of the analysis would be prima facie proof of not being under the influence, other results would be relevant evidence but not prima facie proof, and still other results would be prima facie proof of being under the influence of intoxicating liquor.[5] The evidentiary effect of such results is confined by express language of the statute to situations where "any person is tried in any court of competent jurisdiction within the District of Columbia,"[6] for one of three specified offenses: operating a vehicle while under the influence of intoxicating liquor in violation of Code Section 40–609; negligent homicide in violation of Code Section 40–606; and manslaughter committed in the operation of a vehicle in violation of Code Section 22–2405. Obviously the Department of Motor Vehicles is not a court and just as obviously petitioner was not being tried for violation of Code Section 40–609 as he had already been tried and acquitted on that charge. The hearing under consideration was strictly an administrative proceeding and Code Section 40–609a has no application to such a hearing. It follows that the result of a chemical analysis of blood, urine or breath cannot be received in evidence in a hearing before the Department of Motor Vehicles unless accompanied by expert testimony of a witness qualified to interpret the result, because without benefit of such testimony or resort to the statutory standards the result of the analysis is meaningless. In the present case it is evident that the hearing officer attempted to apply the statutory standard and permitted it to influence or perhaps completely control his finding. Such a finding cannot stand.[7]

■ One further matter requires our attention. In the transcript of the hearing, while the arresting officer was testifying, there appears the notation: "—(changing record)." The next line in the transcript is from petitioner's testimony. It is obvious that the last part of the officer's testimony and the first part of petitioner's testimony is omitted from the transcript. It is impossible to determine the extent of the omitted testimony. Presumably because of this omission, and perhaps others not so obvious, counsel for the Director and the petitioner stipulated in this court that the transcript was in some respects incomplete, but was sufficiently complete for decision of the matters raised. In spite of the obvious omission in the transcript, the hearing officer certified that the transcript is "a true and accurate transcript of the hearing."

In a concurring opinion in Council v. Director of Motor Vehicles, D.C.Mun.App., 159 A.2d 874, 876, the author of this opinion took note of the frequent charges in this court that the transcribed report of hearings in the Department of Motor Vehicles are either incomplete or inaccurate, that the

---

3. See Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F.2d 588.

4. See S.Rep. No. 460, 85th Cong., 1st Sess. (1957); H.R.Rep. No. 1202, 85th Cong., 1st Sess. (1957); H.R.Rep. No. 1330, 85th Cong., 2d Sess. (1958).

5. As specifically applied to the present case, the statute provides that proof of a urine content of twenty one-hundredths of 1 per centum or more, by weight, of alcohol, shall constitute prima facie evidence that defendant was under the influence of intoxicating liquor. The test here showed twenty-four one-hundredths of 1 per centum.

6. Code 1961, § 40–609a(a).

7. In Pieri v. Director of Motor Vehicles, D.C.App., 192 A.2d 807, we affirmed an order of revocation although evidence of the result of the urinalysis test was received without expert testimony, but the point was not raised or called to our attention in that case.

certifications appeared to be only that the recording was accurately transcribed and not that the entire hearing was recorded, and stated that there should be a certification by the hearing officer that the transcript is a complete and accurate record of the hearing. Here we have such a certificate attached to an obviously incomplete record. A perfunctory certificate at its best is meaningless and at its worst is misleading.

The order of revocation is set aside.