Laurence BUNGARDEANU, Petitioner,

v.

George A. ENGLAND, Director, Department of Motor Vehicles, Respondent.

No. 3910.

District of Columbia Court of Appeals.

Argued Feb. 7, 1966.

Decided April 28, 1966.

Charles H. Mayer, Washington, D. C., with whom Lewis H. Shapiro, Washington, D. C., was on the brief, for petitioner.

Hubert B. Pair, Asst. Corp. Counsel, with whom Milton D. Korman, Acting Corp. Counsel, and Donald Santarelli, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

This is an appeal from a decision of the Director of the Department of Motor Vehicles revoking petitioner's driver's license. Petitioner had previously been acquitted in the Court of General Sessions of traffic charges arising out of the same incidents which led to the revocation of his license. He does not now challenge the settled principle that "acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based * * *." Silver v. McCamey, 95 U.S.App.D.C. 318, 320, 221 F.2d 873, 875 (1955); Pieri v. Director of Motor Vehicles, D.C.App., 192 A.2d 807 (1963). But he does claim that the Traffic and Motor Vehicle Regulations of the District of Columbia require a conviction or forfeiture of collateral for the offenses with which he was charged before they can be made the basis for revocation proceedings. He also argues that the regulation under which his license was revoked is unreasonable and unconstitutionally vague and that evidence concerning the results of a chemical urinalysis of a urine specimen taken from him was wrongfully admitted into evidence at his hearing. A summary of the facts follows.

On April 15, 1965, petitioner was arrested by an officer of the Metropolitan Police Department and charged with eight traffic offenses—driving under the influence of intoxicating liquor, reckless driving, three charges of colliding, two charges of leaving after colliding, and one charge of driving on the wrong side of the street. His driver's license was suspended pending final disposition of the charges by the court and by the Department of Motor Vehicles. At the hearing on the suspension the police officer testified that while investigating a hit and run accident at Nineteenth and Riggs Place, N. W., he was called to investigate another accident on Seventeenth Street, N. W., in which petitioner had been involved. The officer determined that petitioner was the same driver who had struck the parked vehicle at Nineteenth and Riggs Place. Another motorist came upon the scene and stated that petitioner had also struck his parked vehicle and had left without revealing his identity. The officer testified that petitioner had a strong odor of alcohol on his breath, that his eyes were bloodshot, and that he was very unsteady on his feet. Petitioner gave a urine specimen approximately one hour after the collisions, and the hearing officer admitted, over objection, testimony about the results of an analysis of the specimen, which was shown to have contained .25 percent of alcohol.

Petitioner testified that he was particularly nervous that day and that he had taken certain medications for an ulcer condition at noon and before leaving work. He then went to a party where he had two drinks, leaving a little before 7:30 P.M. He said that he hit his nose on the steering wheel as he entered his car and that he drove with his handkerchief up to his nose and forehead. He stated that he became dizzy and did not remember much about the collisions. A doctor's letter was admitted explaining that petitioner's reaction to alcohol would be unpredictable because of his ulcer and the drugs he was taking. On the basis of this testimony the hearing officer concluded that petitioner had operated a motor vehicle in such a manner as to show a flagrant disregard for the safety of persons and property in that, while under the influence of intoxicating liquor, he had collided with two parked vehicles causing property damage and had left the scene of the accidents without revealing his identity.

Petitioner was subsequently found not guilty of all the charges filed against him in the Court of General Sessions. Certifications of the judgments were filed in the Department of Motor Vehicles and petitioner was granted a second hearing before the same official who had presided at the first. No further testimony was taken, but

counsel for petitioner again moved to exclude from consideration all evidence concerning the urine sample. The hearing officer overruled the motion, stating that he would consider all the facts. At the conclusion of the hearing petitioner's license was revoked for the same reasons which led to the temporary suspension. Respondent affirmed the decision of the hearing officer and this appeal followed.

The Traffic and Motor Vehicle Regulations of the District of Columbia provide in part that following conviction or forfeiture of collateral for certain traffic offenses, including driving while intoxicated and leaving after colliding, points will be assessed against the driver which can lead to the revocation or suspension of his license. Traffic and Motor Vehicle Regulations of the District of Columbia, Part V, §§ 3, 4. A further provision of the Regulations, Section 5(a), states that:

"Notwithstanding any of the other provisions of this order, the Director of Motor Vehicles, after giving notice and opportunity for hearing, is hereby authorized in his discretion to suspend or revoke the motor vehicle operator's permit or operating privilege of any individual who, in his opinion, * * * has driven a motor vehicle in such manner as to show a flagrant disregard for the safety of persons or property."

It was pursuant to this latter provision that petitioner's license was revoked.

■ Petitioner contends that since his license could not have been revoked under the point system because he was not convicted of any offenses, respondent lacked the power to order the revocation under Section 5(a) for acts which could have led to the assessment of points if there had been a conviction. He claims that the point system would be meaningless if respondent's action were to be upheld. But we believe that it was precisely for circumstances such as those present in this case

that Section 5(a) was promulgated. The purpose of revocation and suspension proceedings is not the punishment of the driver but the protection of the public from those who have demonstrated that their driving presents a hazard to life and property. Tillman v. Director of Vehicles and Traffic of the District of Columbia, D.C.Mun. App., 144 A.2d 922 (1958); Ritch v. Director of Vehicles and Traffic of District of Columbia, D.C.Mun.App., 124 A.2d 301 (1956). Regardless of how many points a driver may have accumulated or whether or not he has been convicted of a traffic offense, he may present such a danger to the community at large that he should not be allowed to continue to use the public highways. The point system was designed to facilitate the determination of who those drivers are, but it is by no means the exclusive method which respondent can use to suspend or revoke licenses. Tillman v. Director of Vehicles, Etc., supra; Ritch v. Director of Vehicles and Traffic of District of Columbia, supra. If a person's driving demonstrates a flagrant disregard for the safety of persons or property, respondent may suspend or revoke his license to drive.

■ We cannot accept petitioner's argument that respondent could not take such action unless he had been convicted of the offenses with which he was charged. There may be many reasons why a driver cannot or should not be punished criminally for the commission of certain acts. But these same acts may present sufficient evidence for a finding that the protection of the public requires that his driving privileges be taken away from him. In Tillman, supra, the driver was found guilty of speeding in a school zone, an offense for which only three points could be assessed. Although twelve points must be accumulated before a license can be revoked under the point system, we affirmed the revocation of his license under Section 5(a) because the Director of Motor Vehicles had found that he had driven his vehicle

in such a manner as to show a flagrant disregard for the safety of persons or property. And in two cases, Pieri v. Director of Motor Vehicles, supra, and Blakey v. Board of Commissioners of District of Columbia, D.C.Mun.App., 177 A.2d 269 (1962), revocation orders based on findings that the motorists had driven while intoxicated were upheld, even though there had been no conviction or forfeiture of collateral for the offense in either case.

▮▮ Petitioner further contends that the standard set forth in Section 5(a) is unreasonable and that the section is too vague to inform the public of the conduct it prohibits. But the section clearly proscribes conduct which shows such a flagrant disregard for the safety of persons and property that the well-being of the community will be endangered. No mere minor infraction will lead to a suspension or revocation under the section, for as we have stated, "The word flagrant * * * imports behavior which is open, notorious or wilful in nature. It means conduct which is shocking or outrageous." Campbell v. England, D.C.Mun.App., 185 A.2d 726, 727–728 (1962). The section is certainly clear enough to warn drivers of the type of conduct which may result in the revocation of their driving privileges without having every proscribed action set out specifically. The fact that the regulation permits respondent to suspend or revoke a license when "in his opinion" the driver has shown a flagrant disregard for life and property does not make its enforcement unpredictable as petitioner contends. A revocation or suspension is permitted only in those cases where there is shown to have been a breach of the usual and reasonable regulations made concerning the control of traffic. LaForest v. Board of Commissioners, 67 App.D.C. 396, 92 F.2d 547, cert. denied 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588 (1937). The Director is required to act reasonably as we decided in the Campbell case, supra, where we reversed the revocation of a license under Section 5(a), stating that:

"The power vested in the Director of Motor Vehicles by the cited section is one to be exercised judicially, not arbitrarily. The facts must support such a finding, otherwise the finding lacks a legal basis, and reveals an abuse of discretion." (Footnotes omitted.) (185 A. 2d at 727.)

▮ We turn now to petitioner's assertion that the results of the urinalysis were wrongfully admitted into evidence and considered by the hearing examiner in reaching his decision. In the case of Lister v. England, D.C.App., 195 A.2d 260 (1963), we ruled that unless such evidence were accompanied by the testimony of an expert qualified to interpret the results, it was inadmissable in a revocation proceeding. The hearing officer had attempted to apply the statutory presumption found in Code Section 40–609a, but we held that the presumption was expressly limited in its application to the trial of certain offenses in the courts and could not be used in an administrative proceeding. See also Holt v. England, D.C.App., 196 A.2d 87 (1963). Since that time, however, the Commissioners of the District of Columbia have promulgated a regulation providing that proof that an operator's urine contained .20 percent of alcohol at the time of operation of a motor vehicle shall constitute prima facie proof that the operator at such time was under the influence of intoxicating liquor. Traffic and Motor Vehicle Regulations of the District of Columbia, Part V, § 15(a) (3). Petitioner does not attack the reasonableness of such a regulation, but contends that the Commissioners exceeded the power delegated to them by Congress in passing it. We do not agree. This was certainly a "usual and reasonable" regulation concerning the revocation of operators' permits. Code 1961, § 40–603(a) (as amended, Supp. V, 1966); cf. LaForest v. Board of Commissioners, supra. As stated in 2 Am.

Jur.2d Administrative Law § 299, at 126, "An administrative agency may declare that certain things shall constitute prima facie evidence or create a rebuttable presumption." See Republic Aviation Corp. v. National L. Rel. Bd., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Juster Bros. v. Christgau, 214 Minn. 108, 7 N.W.2d 501 (1943); cf. Savage v. District of Columbia, D.C.Mun.App., 54 A.2d 562 (1947).

■ Finally, petitioner claims that the urine specimen did not necessarily show its alcoholic content at the time that he was operating his automobile since it was given more than an hour later and was not analyzed until the next morning. The record is silent as to when the analysis was made, so we cannot properly consider this point. However, we repeat what we said to a similar argument in Novak v. District of Columbia, D.C.Mun.App., 49 A.2d 88 (1946), rev'd on other grounds, 82 U.S. App.D.C. 95, 160 F.2d 588 (1947), where the specimen was taken "sometime after arrest" and was analyzed on the following day and again twenty days later (both tests showing the same alcoholic content):

"* * * the very nature of this specimen made improbable any change in it which would have disadvantaged defendant short of deliberate tampering with the bottle. * * *" (49 A.2d at 91.)

And it seems to us that the specimen was given in close enough proximity to the events in question to provide an accurate indication of the alcohol in petitioner's system at that time. Any delay would have been to his advantage.

Respondent's decision revoking petitioner's license because he had demonstrated a flagrant disregard for the safety of persons and property was amply supported by the evidence. Accordingly that decision is

Affirmed.

HOOD, Chief Judge (dissenting):

By Act of Congress of March 4, 1958, D.C.Code 1961, § 40–609a, it was provided that if as the result of the operation of a vehicle, a person "is tried in any court of competent jurisdiction" in the District of Columbia for (1) operating such vehicle while under the influence of intoxicating liquor, (2) negligent homicide, or (3) manslaughter committed in the operation of such vehicle, and if in the course of such trial there is received in evidence, based upon a chemical test, competent proof that at the time of such operation defendant's urine contained eight one-hundredths of 1 per centum or less, by weight, of alcohol, such proof "shall be deemed prima facie proof" that defendant was not under the influence; that proof that defendant's urine contained more than eight one-hundredths of 1 per centum, but less than twenty one-hundredths, shall "constitute relevant evidence, but shall not constitute prima facie proof that defendant was or was not" under the influence; and that proof that defendant's urine contained twenty one-hundredths or more by weight, of alcohol "shall constitute prima facie proof" that defendant was under the influence.

In Lister v. England, D.C.App., 195 A.2d 260 (1963), we ruled that the above statute, being limited by its express terms to trials in court for the three specified offenses, had no application to a proceeding before the Director of the Department of Motor Vehicles for revocation of an operator's permit, and that the result of a chemical analysis of the operator's urine could not be received in evidence in such proceeding unless accompanied by expert testimony of a witness qualified to interpret the result. A few months after our decision the Commissioners of the District of Columbia by amendment to the Traffic and Motor Vehicle Regulations adopted exactly the same evidentiary effect for the result of urine tests contained in the statute for hearings conducted by the Director of Motor Vehicles or by a hearing officer.

At the hearing in the present case the hearing officer received in evidence the result of petitioner's urine test (.25) without testimony of an expert qualified to interpret the result, and stated he would consider it along with all of the other evidence. To what extent the result of the urine test affected the finding by the hearing officer that petitioner was under the influence of intoxicating liquor cannot be told from the record; but I think we must assume it had a significant effect and I think its admission in evidence was error.

The Commissioners of the District of Columbia are authorized to make rules and regulations concerning the issuance, suspension and revocation of operator's permits [D.C.Code1961, 40–603(a), (Supp. V, 1966)], but I do not believe they are authorized to make rules of evidence. The fact that Congress enacted legislation creating such evidentiary rule in certain specified court cases is no authority for the Commissioners to create such rule by regulation for another type of proceeding. Indeed, it appears to me to be quite to the contrary. Congress limited the rule to certain specified cases. In effect the Commissioners have attempted to amend the statute by extending its coverage to hearings before the Director of Motor Vehicles; and I think this is beyond their power.

From a practical viewpoint, I feel this regulation is inappropriate in this type of hearing. Ordinarily an administrative agency sits in a quasi-judicial capacity; but a hearing officer in cases like the one before us acts as both judge and prosecutor. The holder of the permit is called before the hearing officer to show why his permit should not be suspended or revoked. Under this regulation the individual will be required to carry the burden of overcoming "prima facie proof" that he was under the influence of intoxicating liquor at the time of the occurrence. I fear that "prima facie proof" in practice will be treated as absolute proof.