THEODORE BENNER, Administrator of the Estate of
JACK R. BENNER, Deceased, Plaintiff and Appellant,
v. B. F. GOODRICH COMPANY, a corporation, and
JAMES MOLL, Defendant and Respondent.

No. 11229.
Submitted June 19, 1967. Decided July 31, 1967.
Rehearing denied August 15, 1967.
430 P.2d 648.

98

Sias & Hendrickson, Oscar Hendrickson (argued), Chinook, for appellant.

Burns & Thomas, Bernard W. Thomas (argued), Chinook, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a denial of a motion for a new trial after the jury trial resulted in a verdict for the defendant.

The cause of action is a wrongful death action by Theodore Benner, administrator of the estate of Jack R. Benner against respondents Moll and B. F. Goodrich Company.

On January 21, 1965, at approximately 2:50 a. m., Jack R. Benner, son of plaintiff-appellant Theodore Benner, was riding in a 1964 Falcon pick-up driven by Delmar Mitchell. They were proceeding north on Indiana Street the main street of Chinook, Montana. James Moll, defendant-respondent, an employee of B. F. Goodrich Company, defendant-respondent, was traveling in a 1964 Chevrolet Sedan on Highway 2 through Chinook. He was traveling west and hit the Mitchell car at the intersection of Indiana Street and Highway 2. There was a stop sign on the corner of Indiana Street at its intersection with Highway 2. Mitchell and Benner were killed.

The night was cold and the testimony showed that while the snow had blown off the highway there was some snowpack and ruts at the scene of the accident. The respondent testified he was on a business trip and was driving from Harlem, Montana, to Havre, Montana, his home. He estimated his speed between Harlem and the city limits of Chinook to have been between 50 and 55 miles per hour. Approaching Chinook he noted a 45 mile per hour zone just east of the town and the 25 mile per hour sign at the city limits and testified that he was traveling from 25 miles per hour to 30 miles per hour when the accident occurred. Concerning the accident his testimony was:

"Q. How soon before the collision did you see the other car? A. Just a very few feet.

"Q. How many feet? A. I don't know exactly.

"Q. What did you observe about the other car? A. It was just there, it came out in front of me.

"Q. In other words you didn't see that car at all until you collided with it? A. Yes, sir."

The respondent suffered head and shoulder injuries that hospitalized him for several days and from which he was still under medical treatment at the time of the trial a year and a half after the accident.

Introduced at the trial by the appellant was a statement taken at the hospital the night after the accident, the 22nd. This statement was taken by a William Hofdahl, an adjuster-investigator, and it indicated that the respondent was traveling about 35 miles per hour. The city ordinance provided only 25 miles per hour as was indicated and noted by the respondent's testimony. The appellant contends that this speed, in view of the conditions of the road indicated a careless and negligent conduct which resulted in the death of Jack Benner. While this written statement conflicted with the respondent's testimony at the trial it was explained at the trial that respondent was in shock and under heavy sedation and the trial judge felt the matter was a question for the jury.

Appellant sets forth five issues.

(1) Is the verdict of the jury and the judgment thereon, supported by substantial evidence and is the verdict in accordance with the law?

(2) Did the district court abuse its discretion in denying a new trial to plaintiff?

(3) Was it prejudicial to the right of the plaintiff to give, over the objection of the plaintiff, Instructions Nos. 20, 21, 22 and 24?

(4) Was it prejudicial to the rights of the plaintiff to refuse plaintiff's proposed Instruction No. 22? and

(5) Was it prejudicial to plaintiff's right to permit evidence of blood samples, showing that such were taken, by testimony of persons other than those of a person taking the same, and the introduction of same without proper foundation?

While there were no other eyewitnesses to the accident other than respondent, other evidence was received by the jury that shed some light on the amount of drinking by the deceased, the speed of the vehicle just before the accident and the time element in considering whether or not the vehicle had stopped at the intersection. A number of persons testified that in their opinion neither of the men were drunk although they had had from three to five drinks during the evening. The last two persons who saw the men alive, Olson and McDowell, testified that they were on the curb in front of Harry's Cafe when the car went past them and that the car had just started out so the speed was not more than fifteen miles per hour. Harry's Cafe was estimated to be from 200 to 300 feet from the intersection to one-half to three quarters of a block. Olson testified that he started across the street and when in about the middle of the street he heard the crash. Several witnesses testified that they could smell liquor in the car after the accident; others testified to the contrary. There was no visible evidence after the accident from which it could be ascertained whether the northbound car had stopped at the intersection.

In considering the issues presented we will begin with number two and will conclude with one.

It has long been established in this court that when considering the trial court's action regarding motions for a new trial that the granting of a new trial is within the sound discretion of the trial court. Once granted, its order thereon will be reversed only for manifest abuse of that discretion; that an order, general in its terms, granting a new trial, will be upheld if it can be sustained on any grounds stated in the motion therefor; that such an order will not be set aside as readily

as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before trial. Estate of Maricich, 145 Mont. 146, 400 P.2d 873; Herren v. Hawks, 139 Mont. 440, 365 P.2d 641.

In view of the facts presented to the jury, as herein-before stated, it appears there was substantial evidence to sustain the court's ruling in not granting a new trial.

Issue No. 3 concerns the court's failure to give plaintiff's Instructions Nos. 20, 21 and 22, all of which support appellant's contention that contributory negligence cannot be imputed to the appellant. Appellant relies heavily upon this court's holding in Presser v. Anderson, 146 Mont. 396, 407 P.2d 41. However, in that case the fact situation was entirely different. There were no questions raised in Presser v. Anderson of drinking. Here, though the deceased's companion testified that the two men were not intoxicated there was testimony as to the drinking and later proof, the blood tests, that substantiated the amount. We find that it was a jury question whether an ordinarily prudent man would have ridden with Mitchell under the circumstances.

In a similar fact case, Black v. Martin, 88 Mont. 256, 262, 292 P. 577, 578, this court held:

"Whether the plaintiff, a guest, was guilty of contributory negligence was also for the jury. The rule is that the negligence of the driver of an automobile is not generally imputed to the passenger; but this does not absolve the passenger from taking such precautions for his own safety as under the particular circumstances are reasonable. [Case cited.] In other words, the passenger is not absolved from the duty of using ordinary care for his own safety. [Case cited.]" This holding explains why it was not error for the trial court in this case not to give the proposed instructions.

To the court's failure to give the appellant's proposed Instruction No. 22 we find no error. This Instruction reads:

"You are instructed that the negligence of Jack Benner, if

any, was not the proximate cause of his injury, as a result he was not contributorily negligent as a matter of law.''

■ As can be seen from the facts previously set forth the undisputed facts are few. The questions surrounding the accident are fact questions and not questions of law. The effect of this instruction would have been to direct a verdict for the appellant and would have removed from the jury their fact finding power.

The next issue for consideration is whether or not the trial court was correct in giving an instruction which allowed the jury to take into account a covenant not to sue between the appellant and the Mitchell estate in considering the mitigation of damages.

This issue would have been relevant only if the jury had determined that the respondent was negligent and there was no contributory negligence on appellant's part which was the proximate cause of his death. Such a determination was not established here. Assuming arguendo that the jury had made such a determination the principles set forth in Black v. Martin, supra, become relevant for there this court said at p. 265, 292 P. at p. 580: "If the concurrent negligence of two or more persons causes an injury to a third person, they are jointly and severally liable, and the injured person may sue them jointly or severally, and recover against one or all. [Cases cited.] There is but one injury for which each tortfeasor is answerable in full, but, there being but one wrongful act, there can be but one full recovery, one complete satisfaction. When this is obtained the injured party has exhausted his remedy * * *.''

It is proper here, then, that the jury be allowed to mitigate the full recovery by the amount of the covenant. An exception to mitigation is where a collateral source wholly independent of the wrongdoer compensates the plaintiff. Anheuser-Busch Inc. v. Starley, 28 Cal.2d 347, 170 P.2d 448, 166 A.L.R. 198.

That exception is not applicable here. Therefore, the giving of the instruction was not error.

The fifth issue raises for consideration whether the appellant's rights were prejudiced by the methods used in taking the blood of the two deceased men. This is a two part issue in that appellant first objected to the testimony of Howard Gipe, the State Highway Patrolman who investigated the accident, concerning the taking of blood samples from Mitchell and Benner by the mortician Mr. Eliason. We find no error in the trial court's allowing Patrolman Gipe to testify for it showed how they were taken and laid a foundation for the chemical analysis being later entered into evidence.

The admissibility of the results is the second question. Leon Eliason, the county coroner, testified as to the method used in taking the blood samples. He testified that the tube used had held formalin and formaldehyde. In describing the procedure he stated that the tube was washed with clear water and soap before and between samples. Thereafter the samples were sent to the Board of Health in Helena where they were given a modified Nicloux test to determine the alcohol content. According to defendant's exhibits, these tests showed 0.15% alcohol by weight in Mr. Benner's sample and 0.14% alcohol by weight in Mr. Mitchell's sample.

To make those results relevant, section 32-2142, R.C.M. 1947, says that between 0.05% and 0.15% alcohol by weight, there is no presumption that a person is under the influence of intoxicating liquor. Under the same statute, there is a presumption that a person is under the influence of intoxicating liquor when the content is 0.15% or more by weight. Don Ryan, a State Board of Health chemist, testified concerning the chemistry of the test in the laboratory. However, he admitted that he had not studied the procedures of taking the sample. To rebut the validity of the taking the plaintiff had Dr. John Pfaff, a Board pathologist and the medical examiner for the Cascade County Coroner, testify concerning the

method of taking the blood samples. Dr. Pfaff was asked a hypothetical question based on the method used in these tests. It was his opinion that the samples should not be used for determination of alcohol content; he said that with the formalin and formaldehyde contamination the Nicloux test probably would show higher alcohol content than actually existed. This is because the test is a volatility test; the formalin and formaldehyde were not tested for in the samples; these substances could add to the volatility of the sample resulting in a higher than actual alcohol content result. We find on the basis of the testimony in this case, it was improper to admit the results of the blood sample tests. However, we do not conclude the error was reversible. We conclude there was ample tesimony concerning drinking to reduce the effect of the admission of the results, and leave the question to the jury for determination.

Considering the first issue raised whether the verdict of the jury and the judgment thereon are supported by substantial evidence and are in accordance with the law we must answer in the affirmative. Counsel for the respondent contends that the judgment can be sustained for the reason that there is no substantial evidence that shows the respondent negligent. While there was testimony that puts the speed of respondent's car in question, but considering all the testimony the question presented was one of fact for the jury and not one of law for the court.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and ADAIR concur.