# Richmond

## Rufus Jackson v. City of Roanoke.

April 27, 1970.

Record No. 7158.

Present, All the Justices.

John H. Kennett, Jr., for plaintiff in error.

Samuel A. Garrison, III, Commonwealth's Attorney for the City of Roanoke, for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

Rufus Jackson, defendant, on a plea of not guilty, was tried by the court, sitting without a jury, and found guilty of operating a motor vehicle while under the influence of intoxicating beverages, in violation of an ordinance of the City of Roanoke. The trial court fixed his punishment at a fine of $250 and confinement in jail for a term of 30 days. We granted defendant a writ of error to that judgment.

The sole issue before us is whether the evidence is sufficient to sustain the conviction. The defendant concedes that the city proved he was under the influence of intoxicating beverages at the time of his arrest, but contends that it failed to establish he was in that condition at the time he was operating the vehicle.

The evidence is before us in narrative form and it may be summarized as follows:

On the afternoon of April 17, 1968, Jackson, the defendant, was operating a G.M.C. truck south on Lafayette boulevard, a wide street. He "swerved to the right making a wider arc in the turn to the left than necessary", jumped the curb, crashed into a utility pole and broke it.

Benjamin B. Harden, who lived across the street from the scene of the accident, was in his backyard at approximately 2:30 p.m. and heard the "loud crash". He immediately ran to the front of his house and observed the truck which had collided with the pole. He testified that the driver did not get out of the vehicle. Harden went inside his house and reported the accident to the police by telephone. After "a short period of time" he returned to his front porch and watched events until a police officer arrived at the scene. Harden did not cross the street and did not get close enough to defendant to smell his breath, but said that defendant was in a "dazed condition".

Stuart Jenkins was sitting on the steps of a nearby house and observed the truck jump the curb and crash into the utility pole. He testified that defendant remained in the truck for "a long period of time". He became concerned about defendant and approached the truck. Defendant told him he was not hurt, but wanted "someone to fix the broken power line pole". Jenkins then went to a church nearby, telephoned the Appalachian Power Company and reported the condition of the pole. He returned to the scene and remained there until the police arrived, which he said was less than one-half hour after the collision. Jenkins described defendant as being "unsteady on his feet and in a dazed condition." He stated he did not smell the odor of alcohol on defendant, but that he did not get close enough "to smell his breath one way or the other."

Officer J. M. Renick, of the Roanoke Police Department, received a radio call at 2:33 p.m. to investigate the accident. He arrived at the scene and talked with defendant who admitted driving the truck that crashed into the pole. Renick testified that "defendant was in a condition which made * * * [me] suspect he had been driving under the influence of alcohol", and that "defendant denied having any alcohol beverages to drink except a beer earlier in the day". A blood test was made in compliance with the provisions of the implied consent statutes and ordinances that showed that defendant's blood contained 0.21 alcohol by weight.

Luther Watkins, a witness for defendant, testified that he was "well acquainted" with defendant and was a paving contractor like defendant but had no financial involvement with him; that he was driving his station wagon south on Lafayette boulevard and observed defendant standing outside his truck, and that he stopped his vehicle and conversed with him. Watkins further testified that defendant asked him to call the power company and report the broken pole; that defendant said "his head hurt severely"; that he offered defendant a bottle of Scotch whiskey from which he drank "several swallows". Watkins stated that he departed from the scene to report the broken pole to the power company. He said that he did not see Harden, Jenkins or Officer Renick at the accident scene "although several people were standing around."

Rufus Jackson, the defendant, testified in his own behalf. The substance of his testimony, as stated in the narrative, follows:

"* * * On April 17, 1968 at approximately 2:00 o'clock P.M., he had left his [paving company] crew and was returning to his head-quarters near the downtown area of the City of Roanoke. Upon driving southward on Lafayette Boulevard, he swerved to the right making a wider arc in the turn to the left than necessary. He explained he did this because of oncoming traffic even though the street is very wide. His right tires hit the gutter causing him to lose control of the truck which ran off the curve and into a telephone pole breaking the pole. He hit his head against the dashboard of the truck and was in a dazed condition from that time onward.

"After the accident, the defendant sat in the driver's seat of the truck for sometime because he was dazed. He vaguely remembered talking to Mr. Jenkins. He vaguely remembered getting out of the truck talking to Mr. Watkins who gave him a bottle of Scotch whiskey out of which he took several drinks. He vaguely remembered talking to the police officer but did not recall having a blood sample taken from him or any particular conversation about his drinking."

The record further shows that Harden did not observe either Jenkins, Watkins or his station wagon at the scene. The narrative is silent as to whether Jenkins observed Watkins or his station wagon.

Code, § 18.1-57 provides in part: "In any prosecution for a violation of § 18.1-54, or any similar ordinance of any county, city or town, the amount of alcohol in the blood of the accused *at the time of the alleged offense* as indicated by a chemical analysis of the accused's blood in accordance with the provisions of § 18.1-55.1, shall give rise to the following presumptions:

"(3) If there was *at that time* 0.15 per cent or more by weight of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants." [Emphasis added].

The words "at that time" in sub-section (3) clearly relate to the phrase "at the time of the alleged offense". Thus, under the language of the statute the presumption established by the blood test refers to the time of the alleged offense. The City has the benefit of that presumption until it is rebutted.

The crucial question is whether defendant's evidence was as a matter of law sufficient to overcome the presumption and other evidence offered by the City.

The trial judge, as the trier of fact, has resolved all conflicts in the evidence in favor of the City, and we must view the evidence in that light. Jackson contends however that there was no conflict and that his testimony and that of Watkins stands uncontradicted. He says that since his credibility and that of Watkins was not impeached and their testimony is not inherently incredible the court cannot disregard it. He cites *Epperson v. DeJarnette*, 164 Va. 482, 485, 486, 180 S. E. 412, 413 (1935), wherein we said:

"While the jury is the judge of the weight of testimony and the credibility of witnesses, it cannot arbitrarily disregard the uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with other facts and circumstances appearing in the record, even though such witnesses are interested in the results of the litigation."

We cannot agree that defendant's evidence was not inconsistent with other facts and circumstances appearing in the record. Officer Renick testified that Jackson denied having had any alcoholic beverages except a beer earlier in the day. This is clearly in conflict with his own testimony that he had taken "several drinks" from a bottle of scotch whiskey after the accident. Further, defendant told Jenkins that he was "not hurt", but Watkins testified that defendant told him that "his head hurt severely."

In light of these inconsistencies the rule in *Epperson* is inapplicable. The court, sitting as a jury, had the right to believe or disbelieve the testimony of Jackson and Watkins. *Eubank v. Hayden*, 202 Va. 634, 638, 119 S.E.2d 328, 331 (1961). By its finding the court chose the latter course.

*Coffey v. Commonwealth*, 202 Va. 185, 116 S.E.2d 257 (1960); *Fowlkes v. Commonwealth*, 194 Va. 676, 74 S.E.2d 683 (1953) and *Bland v. City of Richmond*, 190 Va. 42, 55 S.E.2d 289 (1949) relied

upon by defendant are not applicable. In those cases the prosecution did not have a presumption operating in its favor.

We hold that defendant's evidence was not as a matter of law sufficient to overcome the presumption and other evidence offered by the City, and that the City's evidence was sufficient to sustain the conviction.

*Affirmed.*