Argued October 27, affirmed November 10, petition for
rehearing denied December 6, 1972

## STATE OF OREGON, *Respondent, v.* THEO PAUL KOHLASCH (No. 28777), *Appellant.*
502 P2d 1158

460

*Nicholas D. Zafiratos,* Astoria, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant appeals from a conviction under ORS 483.999 (1) of driving a motor vehicle when the content of alcohol in his blood was more than .15 per cent. A breathalyzer test administered 33 minutes after his arrest showed that he then had .23 blood-alcohol content. The arresting police officer in answer to questions described what happened after the arrest. On neither direct nor cross-examination was he asked, and he did not indicate, whether defendant had any opportunity to or did ingest alcohol in any form between the arrest and the breathalyzer test. There was no other evidence produced on the same subject, although the defendant took the stand.[1]

---

[1] However, the Breathalyzer Operator's Check List which was received in evidence contains this statement:

"Has at least 15 minutes lapsed since subject took anything by

The only assignment of error is that the case should not have been submitted to the jury because there was insufficient evidence to show what the defendant's blood-alcohol content was at the time he was driving the automobile. Defense counsel expressed his theory in this regard in support of his motion for acquittal:

"* * * Some expert testimony to relate the fact back to what it [blood-alcohol content] was at the time he was driving. The question is not, Your Honor, what it was in the jailhouse but what it was when he was driving. * * * The jury will be allowed to speculate purely and simply.

"* * * * *

"You're asking the jury to speculate and say simply because 33 minutes later it was .23 it must have been .15 or over at that time * * *."

ORS 483.999 provides:

"(1) Any person who drives * * * when that person has .15 percent or more by weight of alcohol in his blood as shown by chemical analysis * * * made pursuant to ORS 483.634 to 483.646 [Oregon's Implied Consent Law] shall be punished * * *.

"(2) For purposes of ORS 482.430, a conviction under this section shall be considered to be a conviction for driving under the influence of intoxicating liquor."

ORS 482.430 provides for loss of driver's license upon conviction of driving while intoxicated

Defendant's contention is that under ORS 483.-999 evidence that a person has a blood-alcohol content of a certain percentage shortly after arrest is not

mouth (Drinking, smoking, eating, taking medication, etc., vomited, or regurgitated) before breath test? Yes."

proof that he had as much or more alcohol in his blood when he was arrested. If a person is arrested for drunken driving and takes the test offered under the Implied Consent Law, and it shows .15 or more blood-alcohol content, there is no longer a question about whether he is intoxicated. He is, upon proper showing, simply guilty of the offense proscribed by the statute.

■ ORS 483.634 to 483.646, Oregon's Implied Consent Law, has been upheld.[2] In ORS 483.642 a number of presumptions are defined. One is that if it is shown at trial that a person was driving a motor vehicle with not less than .10 per cent by weight of alcohol in his blood there is a disputable presumption that he was under the influence of intoxicating liquor. It has repeatedly been held in other jurisdictions where the applicable statute provides a similar presumption that introduction into evidence of chemical analyses showing the requisite content taken varying times after the arrest supports the presumption of intoxication. See cases, Annotation, 16 ALR3d 748 (1967). ORS 483.999 became law in 1971. Oregon Laws 1971, ch 564. The Implied Consent Law was passed in 1965. Oregon Laws 1965, ch 574, amended Oregon Laws 1971, ch 313. Reading ORS 483.999 in *pari materia*[3] with the Implied Consent Law which it refers to, it is obvious the legislature intended that evidence produced by a breath-

[2] For example, Thorp v. Dept. of Motor Vehicles, 4 Or App 552, 480 P2d 716 (1971); Stratikos v. Dept. of Motor Vehicles, 4 Or App 313, 477 P2d 237, 478 P2d 654 (1970), Sup Ct *review denied* (1971); Burbage v. Dept. of Motor Vehicles, 252 Or 486, 450 P2d 775 (1969); Heer v. Dept. of Motor Vehicles, 252 Or 455, 450 P2d 533 (1969).

[3] " 'Statutes which relate to the same thing or to the same subject are in *pari materia,* although they were enacted at different times' * * *." (They are to be construed together.) Coates v. Marion County, 96 Or 334, 339, 189 P 903 (1920).

alyzer chemical test of the defendant shortly after a drunk driving arrest raises a rebuttable presumption that the defendant's blood-alcohol content was no less than shown thereby when he was driving and arrested.

Where the defendant sought to rebut the chemical test result by testifying that he had drunk some liquor between the time he was driving and the time the test was made, the court considered the rebuttable presumption as well as other evidence in determining the fact question. *Jackson v. City of Roanoke,* 210 Va 659, 173 SE2d 836 (1970). In *State v. Robinette,* 13 NC App 224, 185 SE2d 9 (1971), the court spoke of the presumption created by the implied consent statute and said:

> "* * * the word 'presumption' was used in the sense of a permissive inference, or *prima facie* evidence and * * * the jury was at liberty to acquit defendant if they found his guilt was not proven beyond a reasonable doubt * * *." 13 NC App at 226.

In *Bungardeanu v. England,* 219 A2d 104, 16 ALR3d 739 (DC App 1966), a similar case, the court said:

> "Finally, petitioner claims that the urine specimen did not necessarily show its alcoholic content at the time that he was operating his automobile since it was given more than an hour later * * *. * * * [I]t seems to us that the specimen was given in close enough proximity to the events in question to provide an accurate indication of the alcohol in petitioner's system at that time. Any delay would have been to his advantage." 219 A2d at 109.

In *Bungardeanu,* as in the case at bar, no expert testimony was produced to show what change might have been expected to occur between driving time and test

time. The court took particular note of the fact that the regulatory or lawmaking body has the prerogative of declaring that certain evidence can make a prima facie case, or create a rebuttable presumption.[4]

■ Reading the statutes together, we hold that they provide that the chemical test consented to by defendant, and containing .23 blood-alcohol content 33 minutes after arrest, was prima facie evidence, and created a disputable presumption[5] that his blood-

---

[4] The newest work on evidence, McCormick on Evidence 512-513, § 209 (2d ed 1972), states:

"* * * Indeed, where the test has shown a particular blood alcohol content, the courts have expressly or tacitly assumed the proposition that the person's blood-alcohol was at least as high at the time of the accident as at the time of the subsequent test, absent further drinking in the interval.[a]

"* * * * *

"It is important to remember that none of these tests is conclusive, that it is always open to the opponent to adduce countervailing evidence of his sobriety. Likewise, it is important to remember that the tests are not the sole evidence admissible on either side of the issue * * *.

"[a] This is correct if no part of the 'absorption time' is included, and is therefore seldom contested. See State v. Olivas, 77 Ariz. 118, 267 P.2d 893 (1954); Commonwealth v. Hartmann, 383 Pa. 461, 119 A.2d 211 (1956). City of West Allis v. Rainey, 36 Wis.2d 489, 153 N.W.2d 514 (1967) (construing a statute providing that if the test, made within two hours of the accident, showed specific levels, the presumptions were applicable, held that the statute itself actually evaluated the results, and that the only expert testimony required was that relating to proper conduct of the test). For cases tacitly assuming the proposition in the test, see Webb v. Stone, 445 S.W.2d 842 (Ky. 1969); Benner v. B. F. Goodrich Co., 150 Mont. 97, 430 P.2d 648 (1967); Davis v. State, 165 Tex.Cr.R. 622, 310 S.W.2d 73 (1958), cert. denied 357 U.S. 923.

"Prior to these statutes and holdings, it had been estimated that the requirement for expert testimony as to the effects of given alcohol levels, and to present the calculation of retrograde extrapolations was the major expert witness area in criminal cases. Watts, Tests for Intoxication, 45 N.C. L.Rev. 34, 78-79 (1966)."

[5] "Disputable presumption" is used here only in the sense that it has been used by other courts upon whose opinions we have relied herein as precedents. We interpret the North Carolina opinion in *Robinette*, from which we have quoted with approval, as equating this term with "permissible inference" and "prima facie evidence."

alcohol content was .15 or more at the time of his arrest. He had the opportunity to produce rebuttal evidence in this regard. Not having done so, he cannot complain that the jury verdict was not based upon sufficient evidence.

Affirmed.