547 P.2d 1128

**The STATE of Idaho, Plaintiff-Appellant,**

v.

**Duane S. SUTLIFF, Defendant-Respondent.**

**No. 11892.**

Supreme Court of Idaho.

March 29, 1976.

Wayne L. Kidwell, Atty. Gen., Boise, E. C. Rood, Special Asst. Atty. Gen., & Prosecuting Atty., Gem County, Emmett, Gordon S. Nielson, Senior Deputy Atty. Gen., Boise, for plaintiff-appellant.

Michael L. Schindele, of Derr, Derr, Williamson & Poole, Boise, for defendant-respondent.

DONALDSON, Justice.

On August 8, 1974, defendant-respondent Duane S. Sutliff was charged by information with involuntary manslaughter after the pickup truck he was driving collided with a motorcycle, fatally injuring its driver. Trial of the matter was concluded and judgment entered on a jury verdict finding the defendant guilty of the lesser

included offense of Driving While Under the Influence of Intoxicating Liquor. During trial the state presented testimony showing that breath and blood specimens were taken from the defendant with his consent, pursuant to I.C. § 49–352, in order to determine the alcohol content of his blood. The samples were taken some fifty to sixty minutes after the accident. The trial court, however, excluded evidence of the results of tests made on these samples on the ground that the state must first present an expert qualified to extrapolate [1] the results back to the time of the accident. This ruling was apparently premised on the assumption that only intoxication at the time of the accident is relevant to a prosecution under I.C. § 49–1102 (Driving While Under the Influence). The state was unable to produce a witness qualified to make this extrapolation back, and a subsequent offer of proof was denied. The state appeals from the ruling of the trial judge pursuant to I.C. § 19–2804(6), [2] and hence the opinion of this Court is merely advisory in nature. *State v. Berlin*, 95 Idaho 225, 506 P.2d 122 (1973).

The primary question for resolution by this Court is whether the results of properly administered blood alcohol tests must be related back to the time of the alcohol related offense as a foundational prerequisite to admissability.

Naturally, samples of blood, breath or other bodily substances obtained at the time of the accident would be ideal. However, extraction of the samples often requires a trip to a hospital or other medical facility and the exigencies of accidents may require a further delay. Frequently this

works to the advantage of the defendant since the blood alcohol level is generally recognized to decline over time at a fairly predictable pace. However, as respondent points out, the interval of time between the offense and the extraction of the sample does not always work to the advantage of the defendant since the decline in blood alcohol does not begin for 45 to 60 minutes after the last drink, the so-called "peak" period. *State v. Turner*, 94 Idaho 548, 494 P.2d 146 (1972).

Respondent argued successfully at trial that the possibility that his blood alcohol was lower at the time of the accident than at the time of extraction of the samples rendered the results inadmissible absent a witness qualified to extrapolate the results back to the time of the accident. We disagree. At the least, the test results are relevant to corroborate witnesses' testimony of observed physical manifestations of intoxication. The lapse of time prior to the extraction of samples goes to the weight to be afforded the test results and not to their admissibility. *State ex rel. Williams v. City Court of City of Tuscon*, 15 Ariz. App. 229, 487 P.2d 766 (1971) citing *State v. Gallant*, 108 N.H. 72, 227 A.2d 597 (1967).

A more difficult question is presented by the language of I.C. § 49–1102. That statute provides that in a prosecution for Driving While Under the Influence certain presumptions arise following proof that a named percentage of alcohol was in defendant's blood " * * * at the time of the alleged offense as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance * * *." [3]

---

1. The term extrapolation designates the process of determining the percentage of alcohol in the blood at a given number of hours prior to the time the sample was taken. The process involves adjusting the amount of blood alcohol by a given percentage determined by the amount of time prior to taking samples.

2. "An appeal may be taken by the state: * * * 6. From any ruling of the trial judge during the course of the trial on the receipt or rejection of testimony, and from any ruling of the trial judge on the giving or re-

fusal to give instructions to the jury." I.C. § 19–2804(6).

3. The presumptions are established as follows: "1. If there was at the time .08 per cent (.08%) by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating beverages, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

We hold that this statute does not require extrapolation back but establishes that the percentage of blood alcohol as shown by chemical analysis relates back to the time of the alleged offense for purposes of applying the statutory presumption. This holding is in accord with those of other jurisdictions who have considered the question. *Jackson v. City of Roanoke,* 210 Va. 659, 173 S.E.2d 836 (1970); *see also State v. Kohlasch,* 11 Or.App. 459, 502 P.2d 1158 (1972). A contrary result could defeat the statute entirely since an extrapolation, particularly to a period prior to defendant's "peak" period, would often be based solely on the defendant's own testimony as to the amount of alcohol ingested, the period of time over which it was ingested and the time of the last consumption of alcohol. Indeed, should the defendant feel that his blood alcohol level was lower at the time of the alleged offense, the statute specifically provides for "the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating beverages." I.C. § 49–1102(b)4. This section entitles either party to produce a witness capable of extrapolating the results to a prior period of time. The burden, however, is on the party who seeks to introduce this evidence.

The order of the district court excluding evidence of the defendant's blood alcohol level was erroneous. No costs allowed.

McFADDEN and SHEPARD, JJ., and SCOGGIN, D. J., concur.

BAKES, J., concurs in result.

2. If there was at that time more than .08 per cent (.08%) by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating beverages;

3. Per cent by weight of alcohol in blood shall be based upon grams of alcohol per one hundred (100) cubic centimeters of blood. Chemical analysis of blood, urine or breath for the purpose of determining the blood alcohol level shall be performed by a laboratory operated by the Idaho department of health and welfare or by a laboratory approved by the Idaho department of health and welfare under the provisions of approval and certification standards to be set by that department; * * *." I.C. § 49–1102(b).

The presumption established is a rebuttable one. That is, it merely establishes a prima facie case, sufficient to go to the jury, that defendant was under the influence of intoxicating liquor. *See State v. Trujillo,* 85 N.M. 208, 510 P.2d 1079, 1084 (N.M.App.1973).