On appellant's reconsideration filed January 7, 1985 on former opinion (71 Or App 355, 691 P2d 928), reconsideration granted; affirmed October 2, petition for review denied December 17, 1985 (300 Or 451)

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN ARTHUR CONWAY,
*Appellant.*

## (DUC 3714; CA A31711)

707 P2d 618

William Uhle, Portland, for petition.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

Warden, J., dissenting.

## RICHARDSON, P. J.

■     Defendant petitions for review of our decision affirming his conviction for driving under the influence of intoxicants. *State v. Conway,* 71 Or App 355, 691 P2d 928 (1985). We treat the petition as one for reconsideration. ORAP 10.10. We grant reconsideration as to the second assignment of error and affirm.

The second assignment of error concerns an instruction given by the court. Defendant was observed by a police officer driving a vehicle on a parking lot open to the public at approximately 2:10 a.m. The officer concluded that defendant was under the influence of intoxicants and arrested him. Defendant consented to take an intoxilyzer test, which was administered at 3:01 a.m. The blood alcohol reading was .17 percent. At trial, the court instructed the jury:

> "If you find from the evidence that the chemical analysis of the defendant's breath obtained within a reasonable time after his arrest shows that the blood alcohol content was at a certain level, you may infer that the defendant's blood alcohol content was not less than that at the time of driving and arrest."

Defendant challenges the instruction on the basis that it was a comment on the evidence, contrary to ORCP 59E. His principal argument appears to be that the instruction allowed the jury to presume that his blood alcohol content as shown by the breath test at 3:01 a.m. was at least as high as when he was observed driving the vehicle at 2:10 a.m., without any evidentiary support for that conclusion. He contends that the state had to present competent evidence to show what defendant's blood alcohol level would have been at the time when he drove the vehicle and that it cannot depend on a presumption.

The state argues that the instruction does not require the jury to presume a fact but only allows it to infer the fact if it so chooses. The instruction, the state argues, is patterned on our holding in *State v. Kohlasch,* 11 Or App 459, 502 P2d 1158 (1972), which involved *former* ORS 483.999:

> "Any person who drives * * * when that person has .15 percent or more by weight of alcohol in his blood as shown by a chemical analysis * * * made pursuant to [the Implied Consent Law] shall be punished * * *."

The defendant contended that there was not sufficient evidence to sustain a conviction for that offense, because proof of a blood alcohol reading taken after his arrest did not establish that he had .15 percent or greater blood alcohol content at the time when he was driving a vehicle. We said:

> "* * * Reading ORS 483.999 in *pari materia* with the Implied Consent Law which it refers to, it is obvious the legislature intended that evidence produced by a breathalyzer chemical test of the defendant shortly after a drunk driving arrest raises a rebuttable presumption that the defendant's blood-alcohol content was no less than shown thereby when he was driving and arrested." 11 Or App at 462-63. (Footnote omitted.)

We then held that, under the facts of the case, the chemical test consented to by the defendant created a disputable presumption that his blood alcohol was .15 or more at the time of his arrest. We explained that the term "disputable presumption" equated with "permissible inference" and *prima facie* evidence. We concluded that, on the basis of that inference, there was sufficient evidence to support the conviction and noted that the defendant had had the opportunity to produce rebuttal evidence but did not.

It is doubtful that the holding and rationale of *State v. Kohlasch, supra,* survive the analysis respecting inferences in *State v. Rainey,* 298 Or 459, 693 P2d 635 (1985). The Supreme Court discussed inferences as they relate to elements of a criminal offense:

> "* * * When, on a motion for judgment of acquittal, an inferred fact is used to establish an element of the offense * * *, the jury may be left free to infer that fact only when two requirements are satisfied: (1) sufficient evidence has been offered of the existence of the fact(s) giving rise to the inference to allow a rational factfinder to find the underlying fact(s) beyond a reasonable doubt; and (2) a rational factfinder could find that the inferred fact follows more likely than not from the fact(s) giving rise to the inference. When, however, the inferred fact is the sole basis for finding the existence of an element of the crime, a third restraint comes into play. In order to meet the requirement of proof of each element of the crime beyond a reasonable doubt, the jury must be convinced that the inferred fact follows beyond a reasonable doubt from the underlying fact(s)." 298 Or at 466. (Citations omitted.)

Even if the inference allowed by the holding of *Kohlasch* is permissible, *Rainey* makes it clear that an instruction on the inference is not permissible. The court said in *Rainey* that, when used against a defendant respecting an element of the crime, an instruction about an inference ought not to be used. Giving the challenged instruction in this case was error. We conclude, however, that the error was harmless and does not require reversal, because the evidence that defendant was under the influence of intoxicating liquor was overwhelming.

A more complete recitation of this evidence is necessary. The arresting officer was dispatched to check on a "suspicious auto" in the parking lot of a liquor store. He arrived at that location at approximately 2:10 a.m. He found defendant asleep in his vehicle, which had the headlights on and the engine running. As the officer approached the open window of the car, he detected a strong odor of alcohol coming from defendant. He aroused him and asked for his driver's license. He took out his wallet, put it on the seat, put the vehicle in reverse and backed toward the police car. The officer reached in and turned off the ignition. At the request of the officer, defendant got out of his vehicle. The officer testified that defendant was very unsteady and wobbly and used the car for support. The officer immediately concluded that defendant was very intoxicated, arrested him and transported him to the police station. Defendant was given a breath test at 3:01 a.m., and the result was .17 percent blood alcohol.

Defendant testified that on the previous evening he had participated in a softball game and had drunk some beer during the game. Following the game, he went with other participants to a tavern, where they drank more beer. He then went to a friend's house, showered, changed clothes and went with the friend to another tavern, where he drank four or five drinks while eating. He and his friend went to another bar and had one drink before defendant took his friend home at about 1 a.m.

After dropping off his friend, defendant started driving home, which was a distance of about six miles. He testified that, after travelling a short distance, he began to feel the effects of the alcohol he had consumed and pulled into the liquor store parking lot to sleep. He testified that, when he pulled off the road, the alcohol had not affected his ability to

drive but that he was feeling it beginning to take effect. He did not, in his testimony, dispute the officer's assessment of his mental and physical acuity at 2:15 a.m. The friend testified that, in his opinion, defendant was not under the influence of alcohol at 1 a.m., when he had left for home.

Defendant was charged with driving under the influence of intoxicating liquor on premises open to the public—the parking lot—at 2:10 a.m. That charge could be proven by evidence of defendant's actions, from which the jury could infer that he was under the influence, or by a blood alcohol reading. Under former ORS 487.545, a blood alcohol level of .10 percent or greater constitutes "being under the influence of intoxicating liquor." The trial court so instructed the jury just after giving the instruction challenged on this appeal. Under the statutory scheme, the jury was not presented with alternate offenses, but rather it was given evidence of a blood alcohol level and an appropriate instruction that by law defendant was under the influence of intoxicating liquor at the time the reading was obtained.

■   The vice of the challenged instruction is that it instructs on an inference, which *State v. Rainey, supra,* says should be left to oral argument. The fact that it is error to instruct on the inference does not mean the jury is prohibited from drawing the inference that the instruction suggests. If the jury accepted the state's evidence that defendant had a blood alcohol level of .17 percent at 3:01 a.m., by law he was under the influence of intoxicating liquor at that time. It was permissible for the jury to infer that he had also been under the influence about 45 minutes earlier when the officer observed him driving his vehicle on the parking lot. The jury could also have inferred, on the basis of the common knowledge that alcohol dissipates and the fact that defendant had had nothing to drink between the time he was arrested and the time the test was given, that the blood alcohol level was at least as high as .17 percent at 2:15 a.m.

■   In addition to the evidence and permissible inferences respecting the relatively high blood alcohol level, the jury had substantial evidence that defendant had exhibited intoxication at 2:15 a.m. when he had driven his vehicle. The officer testified that, in his opinion, defendant was very intoxicated when he got out of his vehicle, and his description

of defendant's physical movements supports that opinion. Apart from the officer's description, defendant testified that he began feeling the affects of the alcohol he had consumed shortly after 1 a.m. and that that was the reason he pulled into the liquor store parking lot.

With the type and amount of evidence respecting defendant's intoxication, it is highly unlikely that the jury focused on what the blood alcohol level of defendant may have been at 2:15 a.m. when he drove the vehicle. The dissent concludes that the jury was given alternate methods of judging defendant's guilt and, because of the erroneous instruction, may have impermissibly used only the blood alcohol level defendant may have had at 2:10 a.m.

One can, of course, in mechanical logic, reach the abstract proposition that, because the jury could have, consistently with the instructions, based its verdict on the blood alcohol level as improperly described, it must have done so. The blindfold on the figure of justice is a shield from partiality, not reality. The reality is that on this record the jury was unlikely to have reached a verdict as suggested by the dissent.

Reconsideration granted; affirmed.

**WARDEN, J,** dissenting.

I agree with the majority that the trial court erred in giving the instruction based on language in *State v. Kohlasch,* 11 Or App 459, 502 P2d 1158 (1972). Because I do not find the error to have been harmless, I dissent.

The trial court gave the general instruction covering driving under the influence of intoxicants. It also instructed the jury that, if it found that defendant had a blood alcohol level of .10 percent or more, "this constitutes being under the influence of intoxicating liquor." It followed that instruction with the one challenged in this appeal:

> "If you find from the evidence that the chemical analysis of the defendant's breath obtained within a reasonable time after his arrest shows that the blood alcohol content was at a certain level, you may infer that the defendant's blood alcohol content was not less than that at the time of driving and arrest."

The jury was given alternative bases on which they could find defendant guilty—that his ability to drive had been affected perceptibly by his consumption of alcohol or that he drove with a blood alcohol level of .10 percent or higher. The latter basis was flawed by the improper instruction to the effect that the jury was to assume that defendant's blood alcohol was the same or higher at the time he was driving as it was the time the breath test was taken. We cannot tell which of the alternatives, or combination of them, the jury used. Because one of them was impermissibly flawed by the erroneous instruction, it cannot have been harmless.

The last paragraph of the majority opinion sets up a strawman that bears little resemblance to my dissenting position and then flails it with pejorative terms. The giving of the flawed instruction constituted reversible error, not because the jury *must* have based its verdict on it, but because it *could* have, and we cannot tell from the record that it did not. That is the reality that requires reversal.

I would reverse and remand for a new trial and, therefore, I dissent.