725 P.2d 1130

**Marvin W. LOGAN and Marjorie J. Logan, husband and wife, Plaintiffs-Appellants,**

v.

**Thomas B. BROWN, Defendant-Appellee.**

**No. 1 CA–CIV 8442.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 11, 1986.

Hill, Midgley & Hall by Norman D. Hall, Jr., Scott K. Midgley, Barry J. Klinckhardt, Phoenix, for plaintiffs-appellants.

Black, Robertshaw, Copple & Pozgay, P.C. by Steven D. Copple, Philip C. Thorpe, Phoenix, for defendant-appellee.

## OPINION

FROEB, Chief Judge.

The first question is whether the trial court properly refused to instruct the jury on the presumption of driving under the influence of intoxicating liquor, pursuant to A.R.S. § 28–692(E)(3), because plaintiffs failed to introduce any expert testimony relating defendant's 0.12% blood-alcohol content at the time of the breath test back to the time of the accident. The second is whether the court erred in precluding evidence concerning plaintiff's lost profits.

## BACKGROUND

At approximately 1:00 a.m., on June 28, 1983, a semi-truck driven by Marvin Logan (plaintiff) and a pick-up truck driven by Thomas Brown (defendant) collided. Defendant had been preceding plaintiff and was making a left turn before the moment

of impact. Two witnesses testified that they heard plaintiff state that he "guessed" he had fallen asleep.

Defendant testified that on the day of the accident, he finished hitting golf balls and then had two beers at the Wickenburg Country Club from 6:30–7:30 p.m. He then left the Country Club at approximately 7:30 p.m., and went home where he ate dinner. At approximately 9:30 p.m., defendant and his wife left their home to go to the Rancher Bar for an after-dinner drink and to play pool. Defendant testified he drank three to four beers between 9:30 p.m. and midnight or 12:30 a.m.

A former Arizona highway patrolman testified that, after 12:00 a.m., he had talked to defendant for about ten minutes. He stated that he was not concerned at that time with defendant's ability to drive. He did not notice defendant slurring his speech nor did he notice anything unusual about his mannerisms. A police officer testified that, at the time of the accident, defendant smelled of alcohol, his eyes were watery and bloodshot, and his speech was slurred.

Defendant was given a breath test at 2:14 a.m. and again at 2:50 a.m. The second test was given because the printout from the first test was defective. Both tests indicated that defendant's blood alcohol content was 0.12%.

The plaintiff sued defendant, alleging that his conduct was negligent, but ultimately lost with a jury verdict in favor of defendant.

At the time of the trial, the test results were admitted into evidence. The jury was instructed that "[a] person is under the influence of intoxicating liquor when the liquor impairs his ability to operate the vehicle in the manner of a reasonably careful person." However, the court refused plaintiff's instruction that if the jury found "that at the time Defendant Brown was operating his vehicle on June 28, 1983, his blood contained 0.10 percent or more by weight of alcohol, that it is presumed that he was under the influence of intoxicating liquor at that time." The court refused this instruction because plaintiff presented no evidence of defendant's blood alcohol level at the time of the accident.

## DISCUSSION OF TWO PRESUMPTIONS

We are asked to decide whether the trial court erred in refusing to instruct the jury on the statutory presumption of driving under the influence of intoxicating liquor arising from A.R.S. § 28–692(E)(3).

At the time of the accident, what is now A.R.S. § 28–692(E)(3) read as follows:

In the trial of any civil or criminal action or proceeding for a violation of subsection A of this section relating to driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor, ... the amount of alcohol in the defendant's blood at the time alleged as shown by analysis of the defendant's blood, urine, breath or other bodily substance shall give rise to the following presumptions:

\*   \*   \*   \*   \*   \*

If there was at that time 0.10 per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

The more specific question we must decide is whether the trial court erred in refusing this instruction because appellants failed to present evidence which would relate defendant's blood alcohol content of 0.12%, taken approximately one and three-quarters hours after the accident, back to the time of the accident.

It is necessary to initially discuss several minor aspects of the case. First, there is no question that A.R.S. § 28–692(E)(3) refers to the amount of alcohol in defendant's blood at the time of the accident. *See Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121 (App. 1984). *See also Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983).

Second, the main issue on appeal involves instructions to the jury when blood alcohol test results have already been admitted

into evidence. The principles we discuss later, however, may be applicable in determinations relating to the admissibility of the test results in the first instance.

Finally, both parties have presented arguments regarding the application of three Arizona cases. In *State v. Olivas*, 77 Ariz. 118, 267 P.2d 893 (1954), a case involving a defendant charged with driving under the influence of intoxicating liquor, the defendant's blood alcohol content of 0.214% was measured thirty minutes after he was alleged to have driven his car. Despite the fact that there was no evidence presented relating the defendant's blood alcohol content to the time of his actual driving, the supreme court held that the result of the defendant's delayed blood alcohol content analysis was properly admitted into evidence.

In *State ex rel. Williams v. City Court*, 15 Ariz.App. 229, 487 P.2d 766 (1971), a defendant was arrested for driving while intoxicated, in violation of A.R.S. § 28–692. Approximately forty-eight minutes after he had been observed driving, he took a breathalyzer test which measured his blood alcohol content at 0.12%. The issue on appeal was whether it was necessary to affirmatively relate the breathalyzer test result back to the time of the alleged offense as a foundational requirement for admission of the breathalyzer test result into evidence. The court rejected this "relation back" argument and held that the delay in time between the alleged offense and the time of the breathalyzer test affected the weight to be given the test result rather than its admissibility.

In *Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121 (App.1984), defendant's blood alcohol content was measured at 0.03% approximately five hours following the accident. A criminalist and toxicologist testified that, based on the defendant's delayed blood alcohol content test result, defendant's blood alcohol content at the time of the accident would have been at least 0.105%. This witness's opinion was based on the process called retroactive extrapolation. Thereafter, the court instructed the jury on the statutory presumption now found in A.R.S. § 28–692(E)(3). Although defendant contended that this instruction should not have been given, we held that the instruction was proper, given the evidence relating the delayed blood alcohol test result back to the time of the accident.

Defendant contends that *Ring* holds an instruction, pursuant to A.R.S. § 28–692(E)(3), is proper only when evidence has been presented "relating back" a delayed alcohol content test to the time of the accident. We disagree. *Ring* is clearly distinguishable. In *Ring*, the defendant's delayed blood alcohol content test result was *lower* than the statutory presumption level of 0.10%. Accordingly, in order to demonstrate that the defendant's blood alcohol content at the time of the accident equaled or exceeded the level of the statutory presumption, it was necessary to present evidence relating the test values back to the time of the incident. In the present case, however, defendant's delayed blood alcohol content at the time of the test was *greater* than the statutory amount. As we explain later, a different rationale applies in the latter situation in determining whether to instruct the jury on the statutory presumption of driving under the influence of intoxicating liquor.

After reviewing the differences of opinion in state courts on the subject, we conclude that, in Arizona, a rebuttable presumption arises from the fact situation before us. This is not to be confused with the rebuttable statutory presumption of intoxication arising from A.R.S. § 28–692(E)(3). The rebuttable presumption existing in addition to the statutory presumption is that the blood alcohol level of a driver at the time of the incident giving rise to the test is presumed to have been at least as high as it was at the point when the test was actually administered after the incident. This presumption arises by reason of common knowledge that alcohol present in a person's blood will diminish with the passage of time. It is rebuttable because there *may* be occasions when, due to circumstances, a person's blood alcohol

level at the time of the incident may not yet reflect the amount of alcohol consumed. That is, the amount of alcohol in the blood may not have reached its peak. When that is the case, the person adversely affected by this presumption may rebut it with evidence tending to prove that the blood alcohol content was higher at the time of the test than at the time of the incident. Later, we discuss the procedural effects of both of these presumptions and comment upon instructions to the jury. We return now to several relevant cases on the subject.

Taken together, we think that Arizona case law in *Olivas, Williams,* and *Ring* supports this conclusion, although none discuss the issue in terms of a rebuttable presumption. Appellants direct our attention to *State v. Sutliff,* 97 Idaho 523, 547 P.2d 1128 (1976), and *State v. Kohlasch,* 11 Or.App. 459, 502 P.2d 1158 (1972).

*Sutliff* involved a defendant who was found guilty of driving while under the influence of intoxicating liquor. In that case, the defendant's breath and blood specimens were taken fifty-sixty minutes after a vehicle collision involving the defendant. Two issues on appeal were the admissibility of the defendant's delayed blood alcohol content test results into evidence absent evidence relating the test results back to the time of the accident and whether the statutory presumption of driving under the influence of intoxicating beverages was applicable to this case.

The court found that the test results were admissible and that the effect of the delayed testing went to the weight of the test results rather than their admissibility. The issue pertinent to the present appeal, however, was whether the Idaho state statute concerning the presumption of driving under the influence of intoxicating beverages was applicable.

On this point, the Idaho Supreme Court held:

We hold that this statute does not require extrapolation back but establishes that the percentage of blood alcohol as shown by chemical analysis relates back to the time of the alleged offense for purposes of applying the statutory presumption.... A contrary result could defeat the statute entirely since an extrapolation, particularly to a period prior to defendant's "peak" period, would often be based solely on the defendant's own testimony as to the amount of alcohol ingested, the period of time over which it was ingested and the time of the last consumption of alcohol. Indeed, should the defendant feel that his blood alcohol level was lower at the time of the alleged offense, the statute specifically provides for "the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating beverages...." This section entitles either party to produce a witness capable of extrapolating the results to a prior period of time. The burden, however, is on the party who seeks to introduce this evidence.

*State v. Sutliff,* 97 Idaho at 525, 547 P.2d at 1130.

In *State v. Kohlasch,* a defendant appealed from his conviction of driving a motor vehicle while the content of his blood alcohol was more than 0.15%. Thirty-three minutes after appellant was arrested he was given a breathalyzer test which showed his blood alcohol content to be 0.23%. The defendant contended that the case should not have been submitted to the jury because there was insufficient evidence relating his delayed blood alcohol test results back to the time he was driving.

The Oregon Court of Appeals disagreed with the defendant's argument. Instead, the court held:

Reading the statutes [specific Oregon driving while under the influence and implied consent statutes] together, we hold that they provide that the chemical test consented to by defendant, and containing .23 blood alcohol content 33 minutes after arrest, was prima facie evidence, and created a disputable presumption (footnote omitted) that his blood al-

cohol content was .15 or more at the time of his arrest. He had the opportunity to produce rebuttal evidence in this regard. Not having done so, he cannot complain that the jury verdict was not based on sufficient evidence. *State v. Kohlasch*, 11 Or.App. at 464–65, 502 P.2d at 1161 (questioned, however, in *State v. Conway*, 75 Or.App. 430, 707 P.2d 618 (1985)).

A case which favors defendant's argument that expert testimony is required to relate back the test results to the time of the incident is *State v. Dacey*, 138 Vt. 491, 418 A.2d 856 (1980). The Vermont court held that an inference of intoxication could only be based upon blood alcohol level at the time of the incident. The court held that for the inference to operate, expert testimony relating back the test results was required. We are confident that this is not what the Arizona legislature had in mind when A.R.S. § 28–692(E)(3) was enacted and therefore reject this view.

To the contrary, we find that a rebuttable presumption concerning relation back of the test results and which is based upon common knowledge of the dissipation of alcohol in the blood, has, in some other states, been declared by the legislature and enacted into the blood alcohol content statute. For example, California Vehicle Code § 23152(b) (West 1985), states in part:

> In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.10 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had a 0.10 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after driving.

Minn.Stat.Ann. § 169.121(1) (Supp.1985) states: "[i]t is a misdemeanor for any person to drive ...: (d) when the person's alcohol concentration is 0.10 or more; or (e) when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more." Other legislatures have, by inference, equated blood al-

cohol content at the time of the test to blood alcohol content at the time of the offense by limiting the period after the offense within which tests may be administered. *E.g.*, Alaska Stat. § 28.35.030(a)(2) (1984) (four hours); Del.Code Ann. tit. 21, § 4177(b) (1985) (four hours); Hawaii Rev. Stat. § 291–5 (Supp.1984) (three hours); Ohio Rev.Code Ann. § 4511.19(B) (Page Supp.1986) (two hours).

We know of no reason why Arizona courts should not adopt a reasonable presumption concerning this subject in the same way that it has many times declared presumptions to exist on other subjects. In *most* situations when a breathalyzer test is given, the blood alcohol content of a driver will be as high or higher at the time of the incident than at the time of the test. If the opposite is true, then the party urging the opposite should offer proof to rebut the presumption.

We return now to procedural aspects of both presumptions. The statutory presumption of intoxication arising from A.R.S. § 28–692(E)(3) may be rebutted as provided by A.R.S. § 28–692(E)(4), yet the presumption does not vanish with introduction of contrary evidence. *Englehart v. Jeep Corp.*, 122 Ariz. 256, 594 P.2d 510 (1979). Thus, having been introduced into evidence, the jury will necessarily be instructed as to how to apply the presumption. As for the rebuttable presumption that the blood alcohol level at the time of the incident was at least as high as shown later by the test, a different procedural posture is presented. If evidence is introduced which rebuts the latter presumption, the presumption disappears, as with the proverbial bursting bubble, and the jury must decide from the evidence what weight to give the test results. The jury will be instructed to determine this, without specific reference to the presumption which has since disappeared. Of course, if no contrary evidence is introduced, the jury should be instructed that the test results relate back to the time of the incident.

That is, the blood alcohol content is presumed to have been at least as high at the time of the incident as it was at the time of the test.

■ We point out that the presumption of relation back will not be a factor when the test is administered too long after the incident, for then, the dissipation of alcohol in the blood will reduce the reading below the statutory presumption of intoxication and, as with *Ring v. Taylor*, expert testimony will be required to prove the higher level at the time of the incident. This is the process of retroactive extrapolation referred to in *Ring*. We see, then, that the rebuttable presumption, as well as the blood alcohol content itself, dissipates over time.

We consider next whether defendant, in this case, introduced evidence which would rebut the presumption that the test results relate back. After reviewing the record, we find that he did not.

■ First, the fact that defendant took medication between the first and second breathalyzer tests would not amount to rebuttal evidence absent proof that the medication would have an effect on the second test result. Defendant refers us to nothing in the record where such evidence was presented. When the record in the case is voluminous, we have no obligation to search through it to find evidential support for a party's argument. *Hubbs v. Costello*, 22 Ariz.App. 498, 528 P.2d 1257 (1974).

■ Second, the fact that the breathalyzer machine malfunctioned to some extent during the first test is not rebuttal evidence in light of the evidence of the second test result which is not challenged on appeal.

■ Third, the fact that defendant's second blood alcohol content test measured the same blood alcohol level as the first test approximately thirty-six minutes later is not rebuttal evidence in light of the fact that the first test result was treated as defective, thereby necessitating a second blood alcohol test.

■ Last, the fact that a witness spent time talking to defendant immediately before defendant left the Rancher Bar parking lot, the fact that the witness was not concerned with defendant's ability to drive, and the fact that he did not notice defendant slurring his words or notice anything unusual about defendant's mannerisms, does not rebut the presumption that defendant had a blood alcohol content at least as high as 0.12% at the time of the accident.

■ Since this presumption was unrebutted, the court should have instructed the jury both as to the statutory presumption that a person with a blood alcohol content of 0.10% or more is presumed to be under the influence of intoxicating liquor as well as the presumption that the blood alcohol content at the time of the incident was at least as high as at the time of the test. As we pointed out earlier, even if the relation back presumption had been rebutted, the court should nevertheless instruct the jury as to the statutory presumption and allow the jury to decide how the test results bear upon blood alcohol content at the time of the incident.

Next, we point out that this is a civil case and the question of whether test values should be related back in a criminal case, absent proof, must necessarily be left open. However, see *State v. Sutliff* and *State v. Olivas*, cited earlier, which can be construed to permit the application of this rebuttable presumption in a criminal case.

■ As a final issue on appeal, plaintiffs argue it was error for the trial court to refuse to allow Marvin Logan to testify on the issue of lost profits. This testimony related to claimed average income per mile and average expense relating to a new trucking business. The trial

court upheld an objection to this evidence based upon lack of foundation. We find no abuse of discretion, notwithstanding *Rancho Pescado, Inc. v. Northwestern Mutual Life Insurance Co.*, 140 Ariz. 174, 680 P.2d 1235 (App.1984). Even though damages for lost profits may in some instances be shown for a new business venture, they must be proven with reasonable certainty after an appropriate foundation is established. The latter is lacking in this case.

The judgment is reversed and the case is remanded for a new trial and further proceedings consistent with this decision.

JACOBSON, P.J., and EUBANK, J., concur.