POWERS, J., dissenting.
In this case that involves the "sometimes faint" line between permissible inferences and impermissible speculation, I respectfully *1085 dissent from the court's holding that the evidence was insufficient for a reasonable factfinder to conclude that defendant's blood alcohol content (BAC) was over the legal limit of .08 percent when he was driving his motorcycle. In my view, a reasonable factfinder could infer that defendant's BAC was over the legal limit at the time that he was driving based on the later-administered blood alcohol test that registered his BAC at .09 percent and where it was undisputed that he had not consumed any additional alcohol between the time that he was stopped and the time that *408 he was tested. See State v. Eumana-Moranchel , 352 Or. 1, 10, 277 P.3d 549 (2012) (observing, in dictum , that, when a breath test taken after the time of driving establishes that it was over the legal limit, a "jury may infer that the driver's BAC while driving was at least as high as the later test result" (emphasis added) ).
The Supreme Court's reasoning in Eumana-Moranchel is informative. In that case, the court considered "whether the state [could] introduce an expert's testimony to prove that [a] defendant's [BAC] was over the legal limit of .08 percent when a police officer stopped him for driving erratically, even though [that] defendant's BAC was under the legal limit at the time of his breath test, approximately an hour and a half later." 352 Or. at 3, 277 P.3d 549 (emphasis added). Specifically, the court considered whether testimony regarding retrograde extrapolation-that is, the process by which an expert estimates a person's BAC while driving based on a later-administered breath or blood test-was a permissible way for the state "to connect the breath test result to the statutory requirement of a BAC of .08 percent or more at the time of driving." Id. at 9-10, 277 P.3d 549.
The court began its analysis by noting that "[s]omething more is necessary to connect [a] breath test result to the statutory requirement of a BAC of .08 percent or more at the time of driving" because "it is virtually always the case that the chemical test of the breath or blood is administered some time after the person has stopped driving." Id. at 9-10, 277 P.3d 549 (emphasis in original). Then, citing dicta from an earlier case for the proposition that "the fact that blood alcohol dissipates over time is common knowledge," the court recognized that it had previously
"suggested that, when a breath test taken after the time of driving establishes a BAC of .08 percent or higher, the trier of fact reasonably may infer the necessary connection. That is, the jury may infer that the driver's BAC while driving was at least as high as the later test result."
Id. at 10, 277 P.3d 549. The court went on to note, however, that, when the breath test indicates a BAC under .08 percent, more evidence may be necessary because the precise rate of dissipation "is not necessarily common knowledge." Id.
*409 As the court continued its analysis, it once again reiterated that an inference that blood alcohol rates dissipate over time can serve as the necessary connection between a breath test and the defendant's BAC at the time that he or she was driving:
"[ ORS 813.010(1)(a) ] requires the chemical analysis to 'show' the actual presence of alcohol in the blood at the time of driving; it does not merely require a certain instrument reading. That is, under the statute, the 'chemical analysis' is the numerical result that the machine produces together with an explanation of that result. That explanation can simply be an inference that blood alcohol rates dissipate over time."
Id. at 11, 277 P.3d 549 (emphasis omitted). The court also concluded that that explanation could also be "an expert's testimony explaining that retrograde extrapolation shows the actual presence of the prohibited percentage of alcohol in a driver's blood when he or she was driving." Id. As a result, the court held that "the state should have been permitted to offer the expert's testimony explaining retrograde extrapolation to establish that defendant's BAC was over .08 percent at the time he was driving." Id. at 14, 277 P.3d 549.
Applying the reasoning in Eumana-Moranchel here, the trial court, acting as a factfinder, could have inferred that defendant's BAC at the time that he was driving was at least as high as his BAC at the time that he took a breath test, based on the following evidence and permissible inference: (1) defendant's *1086 breath test was performed one hour and 45 minutes after he drove; (2) there was evidence that defendant had not consumed alcohol between the time that he was stopped and the time of his breath test; and (3) the permissible inference based on common knowledge that blood alcohol rates dissipate over time. See also State v. Parker , 317 Or. 225, 232 n. 9, 855 P.2d 636 (1993) (stating, in dictum , that, where defendant took a breath test more than five hours after he crashed his car that indicated that he had a BAC of .07 percent, "[t]he state *** did not need to call an expert on the dissipation of alcohol" because "[i]t is common knowledge that the level of alcohol in the blood and alcohol's effect on a person's behavior dissipate over time" (internal quotation marks omitted) ). The majority opinion's *410 reasoning may be correct for cases in which a breath test registers a BAC below the legal limit, viz. , additional evidence beyond the results of the breath test becomes necessary because the precise rate of dissipation "is not necessarily common knowledge." Eumana-Moranchel , 352 Or. at 10, 277 P.3d 549. But in this case, where defendant's BAC of .09 percent was over the legal limit one hour and 45 minutes after being pulled over and where there was no evidence that he had consumed alcohol after being stopped, there is, in my opinion, sufficient evidence to withstand a motion for judgment of acquittal.
That conclusion is also supported by our reasoning in State v. Conway , 75 Or. App. 430, 707 P.2d 618, rev. den. , 300 Or. 451, 712 P.2d 110 (1985), a case in which the defendant's .17 percent BAC was over the legal limit about 45 minutes after he was stopped. In Conway , we held that the trial court erred when it instructed the jury:
" 'If you find from the evidence that the chemical analysis of the defendant's breath obtained within a reasonable time after his arrest shows that the blood alcohol content was at a certain level, you may infer that the defendant's blood alcohol content was not less than that at the time of driving and arrest.' "
Id. at 432, 434, 707 P.2d 618. Notably, we determined that, although it was error for the trial court to instruct on such an inference in a per se intoxication case, "[t]he fact that it is error to instruct on the inference does not mean the jury is prohibited from drawing the inference." Id. at 435, 707 P.2d 618. In reaching that conclusion, we noted that "[t]he jury could * * * have inferred, on the basis of common knowledge that alcohol dissipates and the fact that defendant had had nothing to drink between the time he was arrested and the time the test was given, that [his] blood alcohol level was at least as high as .17 percent" at the time he was stopped. Id. (emphasis added). Consequently, like the reasoning of Eumana-Moranchel , the reasoning in Conway also supports the conclusion that the trial court did not err in this case.
To be sure, the statements from Eumana-Moranchel , Parker , and Conway that support affirmance in this case are dicta . Those statements, however, are well reasoned and *411 comport with our observations on reasonable inferences. As we have explained previously:
"In establishing [an] element, the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence. An inferred fact must be one that the [factfinder] is convinced follows beyond a reasonable doubt from the underlying facts. But the requirement that the [factfinder] be convinced beyond a reasonable doubt does not mean that a particular inference must inevitably follow from the established facts. Rather, the established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the [factfinder] to decide."
State v. Bivins , 191 Or. App. 460, 466-67, 83 P.3d 379 (2004) (citations omitted).
The majority opinion attempts to distinguish Eumana-Moranchel , Parker , and Conway by attaching significance to the absence of evidence in this case "bearing on the movement of alcohol through defendant's body or the presence of alcohol in defendant's body at the time or shortly before defendant drove." 290 Or. App. at 406, 415 P.3d at 1084. As the majority opinion frames it, "[w]ithout that additional evidence, it does not follow solely as a matter of probability and logic that a person whose BAC is measured at .09 percent would have necessarily had a BAC of at least .08 percent an hour *1087 and 45 minutes earlier if he or she consumed no alcohol during that intervening time period." Id. at 406-07, 415 P.3d at 1084. That approach, however, runs contrary to Bivins , and therefore we should conclude that Eumana-Moranchel , Parker , and Conway are persuasive in this case.
First, Bivins explains that both circumstantial evidence and reasonable inferences flowing from that evidence may be used to establish an element of a crime. 191 Or. App. at 466, 83 P.3d 379. In this case, there is circumstantial evidence bearing on the movement of alcohol through defendant's system. Although there is no direct evidence in the record of how much alcohol defendant consumed or precisely when he consumed it, there is circumstantial evidence that he consumed some quantity of alcohol such that the later-administered breath test revealed a .09 percent BAC. That later-administered breath test tells us that, at some point, his BAC
*412 violated the legal limit and further that his BAC exceeded the legal limit for some amount of time. The evidence does not tell us how long he was at or above the .08 percent BAC threshold or when he crossed that threshold, but the evidence is conclusive that he crossed the threshold. Further, it is not unreasonable to conclude that the alcohol he did consume would, at some point, leave or dissipate from defendant's system. Again, we do not know the precise rate of dissipation given the minimal evidence in the record, but not knowing the rate of dissipation is substantively different from the majority opinion's conclusion that this case "does not include any evidence bearing on the movement of alcohol." 290 Or. App. at 406, 415 P.3d at 1084 (emphasis in original).
Although the majority opinion requires "additional evidence guiding the trier of fact on rates of accumulation and dissipation," 290 Or. App. at 406, 415 P.3d at 1084, two hypotheticals show why additional evidence is not necessary. First, if a breath or blood test administered a mere nine minutes after a person drove-instead of one hour and 45 minutes later, which is presented in this case-revealed a .09 percent BAC, it would be reasonable to infer that the driver was over the legal limit at the time of driving.[1] Similarly, if a breath test established a .09 percent BAC nine hours after the person drove-and like this case, there was no evidence that the driver consumed any alcohol after the stop-it would be similarly reasonable to infer that the driver was over the legal limit at the time of driving given common knowledge that alcohol dissipates over time. In both hypotheticals, the *413 later-administered breath test revealing a .09 percent BAC logically can lead to a conclusion that the driver was over the legal limit at the time of driving without the need for additional evidence.[2] Why then does the majority opinion conclude that a breath test after an hour and 45 minutes after driving becomes too speculative for a reasonable factfinder to *1088 conclude that defendant was over the legal limit when he drove such that additional evidence is necessary to withstand a challenge to the sufficiency of the evidence?
One possible explanation is because the majority opinion looks for the conclusion to "follow solely as a matter of probability and logic" and that the conclusion "necessarily" would have had to occur. 290 Or. App. at 406, 415 P.3d at 1084. But those requirements run contrary to Bivins , which explains that "the requirement that the [factfinder] be convinced beyond a reasonable doubt does not mean that a particular inference must inevitably follow from the established facts. Rather, the established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the [factfinder] to decide." 191 Or. App. at 467, 83 P.3d 379 (emphasis added; citations omitted).
Another possible explanation for the approach set out in the majority opinion involves the possibility that defendant's BAC was still rising at the time he was driving. Under that scenario, because whatever alcohol he consumed was still being absorbed, it is possible that his BAC was not .08 percent or higher when he was driving and that alcohol continued to enter his blood after he was stopped such that an hour and 45 minutes later he had a .09 percent BAC (either because his BAC peaked at some higher level and was on the way down or because it took that long to absorb sufficient alcohol to reach a .09). Although a plausible scenario-and *414 possibly even a reasonable inference-given the state of the record in which there is neither evidence to establish how alcohol is absorbed and eliminated generally in the body, nor evidence specific to defendant, or someone similarly situated, on absorption and dissipation of alcohol, the majority opinion's reliance on the possibility of a rising BAC does not align with our standard of review. In reviewing the sufficiency of the evidence, we examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences * * * could have found the essential element of the crime beyond a reasonable doubt." State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 US 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995) (emphasis added). Thus, because a rising-BAC explanation for the evidence is but one reasonable inference, under our standard of review, that interference alone cannot be the basis for the conclusion that the evidence is insufficient in this case.
The established facts in this case support multiple reasonable inferences about defendant's BAC when he was driving: it could have been lower than the later test result; it could have been "at least as high" as the later test result; or it could have been the same as the later test result. Because there are multiple reasonable inferences, the motion for judgment of acquittal should have been denied, as it was for the factfinder to decide "which inference to draw." Bivins , 191 Or. App. at 467, 83 P.3d 379.
In short, in analyzing the sufficiency of the evidence, because "we make no distinction between direct and circumstantial evidence as to the degree of proof required," State v. Hall , 327 Or. 568, 570, 966 P.2d 208 (1998), and because it is a reasonable inference that defendant's BAC was at least as high as the later-administered test result of .09 percent, the trial court did not err in denying defendant's motion for judgment of acquittal. Accordingly, I respectfully dissent.
DeVore, J., joins in this dissent.

In practice, however, a chemical analysis of the breath or blood takes much more time to administer. As the Supreme Court explained:
"[I]t is virtually always the case that the chemical test of the breath or blood is administered some time after the person has stopped driving. That is so for several reasons. First, a breath test may not be administered until after the driver actually has been arrested for DUII. In all cases, a certain amount of time will have passed after the stop and before the arrest, while a police officer investigates the crime. In addition, to test the driver, the police officer must use a specific machine, the Intoxilyzer 5000 or the Intoxilyzer 8000, which are the only breath test machines approved by the Oregon State Police for use in performing a chemical analysis of a person's breath, *** and which typically are located at the police station. Finally, before administering the test, the police officer must inform the person of the consequences of refusing to take a breath test, *** and then wait at least 15 minutes to be certain that the person has not taken anything by mouth, vomited, or regurgitated."
Eumana-Moranchel , 352 Or. at 9, 277 P.3d 549 (emphasis in original; citations omitted).

It is worth noting that the Supreme Court has recognized that, "for purposes of the Oregon Constitution, the evanescent nature of a suspect's blood alcohol content is an exigent circumstance that will ordinarily permit a warrantless blood draw" depending on the circumstances of the case. State v. Machuca , 347 Or. 644, 657, 227 P.3d 729 (2010). Thus, it is difficult to square the reasoning of the majority opinion that alcohol dissipating "does not logically lead to any conclusion regarding a specific person's earlier BAC at a specific time," 290 Or. App. at 405, 415 P.3d at 1083 (emphasis added), with the court's recognition that, under our state constitution, the evanescent nature of a person's blood alcohol content can generally create an exigent circumstance.